382        COURT OF APPEALS OF WEST VIRGINIA.

July Term,        W. Va. Trans. Co. vs. Volcanic O. and C. Co.        1872

# WEST VIRGINIA TRANSPORTATION COMPANY vs. THE VOLCANIC OIL AND COAL COMPANY.

### July Term, 1872.

1. A company incorporated by the legislature for the purpose of constructing and maintaining a line or lines of tubing, for the purpose of transporting petroleum or other oils through pipes of iron or other materials, to any railroad, navigable stream, &c.; and to transport from the termini of such pipes, petroleum, &c., in tank cars, boats or other receptacles belonging to such company; and where the maximum rates for such transportation is also fixed in the act of incorporation, is held to be a tube highway and an " internal improvement," within the meaning of the 6th section of the XIth article of the constitution, and consequently was such a company as the legislature might create by special act.

2. Being such an " internal improvement " company, it was competent for the legislature to confer upon it the exercise of eminent domain, in acquiring the right of way over lands, and to condemn the same, according to law.

3. It was a sufficient attempt to " agree," in the language of the statute, upon the damages that would accrue to the Vol. O. & C. Co., by reason of the W Va. Trans. Co. passing over its lands and acquiring a portion thereof, that the latter made offers through its agents, to the agents of the former, at its principal office in the State, the president and directors thereof residing out of the State, to support the motion for the appointment of commissioners according to law. The company was not bound to go out of the State to make an offer of agreement.

4. The facts in the case show that it was proper to have appointed the commissioners.

This was a notice of a motion, filed and docketed in the circuit court of Wood county, on the 15th of December, 1868.

The notice filed by the Transportation Company to the Oil and Coal Company, was that the former would require the right of way on and sixty feet square of grounds belonging to the latter, for a pumping station ; and that having been unable to agree with the Oil and Coal Company on terms of purchase of right of way on its lands, and also the fee simple of the sixty feet square, the former company

would apply to the circuit court of Wood county for the appointment of five disinterested freeholders, for the purpose of ascertaining a just compensation for the right of way and the sixty feet square in fee simple, according to the sixth section of chapter 56 of the Code of Virginia, 1860, and the charters of the Transportation Company.

On the 24th of December, 1868, the circuit court denied the motion and gave defendant costs.

The facts were certified as duly proven, in a bill of exceptions taken by plaintiff, as follows:

"*First.* That said plaintiff is a corporation organized and incorporated under and by virtue of two several acts of the legislature of the State of West Virginia, one thereof entitled "An act to incorporate the West Virginia Transportation Company," passed February 26th, 1867 (see chapter 95 of the acts of 1867), and the other thereof, entitled "An act to amend the charter of the West Virginia Transportation Company," passed February 26th, 1868 (see chapter 67 of the acts of 1868).

"*Second.* That the capital stock of said plaintiff has been subscribed and two-thirds of the same paid in as required by the third section of the act of 26th February, 1868, last mentioned.

"*Third.* That the defendant is a corporation formed under the act of the legislature of the State of West Virginia, passed October 26th, 1863, entitled "An act providing for the formation of corporations and regulating the same" (see chapter 83 of the acts of 1863); that said defendant is the owner of lands in fee simple in Wood county, State of West Virginia, as described in the map and specifications annexed to the notice upon which this motion is founded, and that the principal office or place of business of said defendant is upon the lands thereof at Volcano, Wood county aforesaid.

(For certificate of incorporation of said defendant, dated November 30th, 1864, offered in evidence on the trial of this motion, see acts of the legislature of the State of West Virginia for the year 1865, page 113.)

"*Fourth.* That the plaintiff, at a meeting of its president and board of directors held on the 24th day of June, 1868, duly passed and enacted a resolution, authorizing one James McArthur to enter upon lands, examine same, and survey

384   COURT OF APPEALS OF WEST VIRGINIA.

July Term,   W. Va. Trans, Co. vs. Volcanic O. and C. Co.   1872

and lay out such as might seem to him fit for the purposes of the plaintiff, pursuant to the fourth section of chapter 56 of the Code of Virginia, edition of 1860; and in pursuance of said resolution said James McArthur did enter upon the lands aforesaid of defendant, examine same, make surveys thereof, and lay out a proposed line for a pipe or tubing thereon and branch pipes, for the purpose of transporting petroleum or other oils and fix the location for a pumping station thereon, as indicated upon the map annexed to the notice aforesaid.

"*Fifth.* That the plaintiff, at a meeting of its president and board of directors, held September 18th, 1868, duly passed and enacted a resolution, authorizing said James McArthur to offer and tender unto said defendant the sum of fifty dollars for the right of way over its lands by said plaintiff for the purpose of laying a pipe or pipes thereon, as provided by the charter of said plaintiff.

"*Sixth.* That the plaintiff, at a meeting of its president and board of directors, held on the 23d day of November, 1868, duly passed and enacted a resolution authorizing one Philip L. Wilson to offer and tender to the said defendant the sum of one hundred dollars for the right of way over its lands and the fee simple of sixty feet square thereof, for the purpose of laying a pipe or pipes thereon and building a pumping station thereon, as provided by the charter of said plaintiff.

"*Seventh.* That on the 26th day of September, 1868, one William C. Stiles, Jr., was the president of said defendant, and that both he and the parties composing the board of directors of said defendant, resided in the city of Philadelphia, State of Pennsylvania, and that at the time aforesaid, one William R. Sterling was the general agent and superintendent of said defendant and a stockholder therein, residing in Wood county, West Virginia; and that said Stiles and Sterling continued to be such president and agent, respectively, until October 1st, 1868, and that said Sterling, as such agent, had no authority to make a deed or conveyance to said plaintiff of the right of way required pursuant to the resolution of said plaintiff aforesaid, passed September 18th, 1868.

"*Eighth,* That on the 1st day of October, 1868, said William C. Stiles, Jr., ceased to be the president of said defendant,

and one R. H. Gratz became the president thereof and ever since has been said president; that both said Gratz and the board of directors of said defendant elected with him, then resided and ever since have resided in the city of Philadelphia aforesaid, and that on said 1st day of October, 1868, said William R. Sterling ceased to be the general agent and superintendent of said defendant, and said William C. Stiles, Jr., was appointed in his place and stead, and removed to this State for that purpose, and ever since has continued to be said general agent and superintendent of defendant, and that said Stiles, as such agent, had no authority to make such a deed to the plaintiff of the right of way and fee simple required pursuant to the resolutions of the plaintiff aforesaid, passed September 18th, 1868, and November 23d, 1868, respectively, and that at no time since the passage of the resolutions aforesaid has the defendant had any agent in the State of West Virginia, authorized to make or execute such deed or transfer, and that all official and solemn acts of said defendant emanate from the board of directors thereof, who hold their meetings in the city of Philadelphia aforesaid.

"*Ninth.* That the right of way through and over and fee simple in sixty feet square of the lands aforesaid of said defendant, were required by said plaintiff for the purposes and objects indicated in its two several charters aforesaid.

"*Tenth.* That on the 26th day of September, 1868, the said James McArthur, by virtue of the resolutions aforesaid, passed by said plaintiff on the 18th of September, 1868, at the principal office or place of business of said defendant at Volcano, Wood county aforesaid, tendered to one E. W. Staples, a clerk in and in charge of said office, the sum of fifty dollars in legal tender for said right of way; said sum was' refused. At the time of the said tender the President of said defendant was in Philadelphia aforesaid, and said William R. Sterling, agent as aforesaid, was absent from said office, and out of this State; that upon the return of said Sterling a day or two afterwards, he communicated said tender to the board of directors of said defendant, and the said defendant has never accepted the same.

"*Eleventh.* That on the 24th day of November, 1868, the said Philip L. Wilson, by virtue of the resolution aforesaid,

passed by said plaintiff November 23d, 1868, at Parkersburg, Wood county aforesaid, tendered to William C. Stiles, Jr., then general agent as aforesaid of said defendant, the sum of three hundred dollars in legal tender for the right of way and sixty feet square in fee simple of the lands aforesaid, described in the notice, map, and specifications aforesaid; which said sum was then and there refused, and said defendant has not since, by said Stiles or otherwise, accepted the same.

"*Twelfth.* That the pipe or line of tubing proposed to be laid by said plaintiff is of two inches in internal diameter, and that in order to lay the same a trench about eighteen inches deep and about one foot wide is dug and the pipe laid in. Then the trench filled up and not again disturbed unless for repairs, which are but seldom required after the pipe is once in working order. No timber or building would be disturbed by the laying of said pipe. The lands aforesaid of said defendant are what are commonly known as wild lands, and for several years past have been oil producing. To lands of the latter character, a pipe or line of tubing is beneficial, because it increases the means of transporting the oil produced.

"*Thirteenth.* That as a usual thing the plaintiff has procured right of way over lands in the vicinity of defendant for the purpose aforesaid, at prices ranging from five to twenty dollars, and in many cases has received the same for nothing, owing to the advantages and benefits afforded by. said pipe or tubing.

"*Fourteenth.* That upon the trial of said motion said plaintiff claimed and produced testimony to prove that the offer of three hundred dollars, made as aforesaid, would be a just and reasonable compensation for the same, and therefore it was proven that a fair compensation would be from three hundred to one thousand dollars.

"*Fifteenth.* That on the 29th day of October, 1868, said James McArthur exhibited to said William C. Stiles, Jr., a map like the one annexed to the notice aforesaid, and explained to him what said plaintiff desired, the line and course said pipe would take, and the distance (some four or five miles) it would pass over said defendant's land. And that

both said Sterling and Stiles were acquainted with the general nature and requirements of a line of pipe or tubing for transporting oil, and that said Sterling is part owner of a pipe for said purposes, now in operation at Volcano, Wood county, aforesaid."

The plaintiff brought the case here for review.

*Sands* for the plaintiff in error.
*Hutchinson* for defendant in error.

MOORE, J. It has been decided time and time again, and is therefore settled by the best authority, that the construction of railroads, turnpikes, canals, ferries, telegraphs, wharves, basins, &c., creating the necessary facilities for intercommunication, constitutes what is generally known by the name of *internal improvements,* and gives occasion for the exercise of the right of *eminent domain.* It has been held that railways are but improved highways, and are of such public use as to justify the exercise of *eminent domain.* (Redfield on Railways, title Eminent Domain, § 2 and notes.) Judge Cooley, in his masterly work, "Constitutional Limitations," second edition, side page 533, upon authorities cited, thus forcibly writes: "Every government is expected to make provision for the public ways, and for this purpose it may seize and appropriate lands. And as the wants of traffic and travel require facilities beyond those afforded by the common highway, over which any one may pass with his own vehicles, the government may establish the higher grade of highways, upon some of which only its own vehicles can be allowed to run, while others, differently constructed, shall be open to use by all on payment of toll. The common highway is kept in repair by assessments of labor and money; the tolls paid upon turnpikes, or the fares on railways, are the equivalents to these assessments; and when these improvements are required by law to be kept open for use by the public impartially, they also may properly be called highways, and the use to which land for their construction is put, be denominated a public use. The government also provides court houses for the administration of justice; buildings for its seminaries of instruction; aqueducts to convey pure and

388     COURT OF APPEALS OF WEST VIRGINIA.

July Term,     W. Va. Trans. Co. vs. Volcanic O. and C. Co.          1872

wholesome water into large towns; it builds levees to prevent the country being overflowed by the rising streams; it may cause drains to be constructed to relieve swamps and marshes of their stagnant water : and other measures of general utility, in which the public at large are interested, and which require the appropriation of private property, are also within the powers where they fall within the reasons underlying the cases mentioned."

The charter granted to " *The West Virginia Transportation Company,*" by especial enactment of the legislature, shows that the object was "to construct and maintain a line or lines of tubing, for the purpose of transporting petroleum or other oils through pipes of iron or other materials, in the counties of Wirt, Wood, Ritchie and Pleasants, in the State of West Virginia, to any railroad or other roads, or to any navigable stream or streams in or adjoining the counties aforesaid, and to transport from the termini of said pipe or pipes, petroleum or other oils in tank cars, boats or other receptacles belonging to said company," &c.

The charter also established the maximum charges the company should make for transportation of oils. I cannot see the propriety of admitting a railway, or canal, or acqueduct to be an "internal improvement," and declare this tube highway for transportation not to be. It is an "internal improvement," within contemplation of the constitution, art. XI. § 5, which gave the legislature power to create the company by special acts.

The charter also empowers the company "to enter and condemn lands, and to acquire rights of way in the counties aforesaid, for the purposes of said company, in the manner provided in the fifty-sixth chapter of the Code of Virginia, second edition; and in such cases where it may be deemed advisable by said company, shall, at its option, have the power to acquire a sufficient right of way only for the purpose of its said improvement, over any such lands, instead of the fee simple thereof."

That the legislature had the power to confer on the company the right to enter and condemn lands, is not an open question. Private property can only be taken for public uses pursuant to law; it must be authorized by legislative

enactment, and a strict compliance must be had with all the provisions of the law before a party can ·be deprived of his property.

In this case, the company has proceeded to condemn the land in the manner provided in the fifty-sixth chapter of the Code of 1860, as directed by its charter. By the sixth section of said chapter it is declared, "If the president and directors of a company incorporated for a work of internal improvement," "cannot agree on terms of purchase with those entitled to lands wanted for the purposes of the company," "five disinterested freeholders shall be appointed by the court of the county or corporation in which such land or the greater part thereof shall lie (any three of whom may act), for the purpose of ascertaining a just compensation for such land." (Since the county court was abolished the circuit court has jurisdiction in such applications.) The company has proceeded regularly under the statute, but the appellee insists that the company had no right to proceed to the appointment of commissioners, as it did not appear that the appellant and appellee could not agree on terms of purchase of the lands by the appellant. It appears that the appellee is a corporation organized under the general corporation laws of the State, passed in 1863, having its principal office or place of business in Wood county, but its president and board of directors resided without the State. The appellant, by resolutions, determined on sums extending to three hundred dollars as the amount it was willing to give for the land, and appointed agents to make the offers to the appellee; the agents did make the offers through the agents of the appellee, at its principal office of business in this State; the money was then and there refused.

It seems to me the attempt to agree was sufficiently made, and that it was not incumbent on the appellant to have made further effort, as it was not necessary to go to the president and directors out of the State for that purpose, when there was an agent at the office of business in the State. The facts as stated in the bills of exception certainly indicate that the appellant made an honest effort to bring about an agreement on the amount of compensation; not less than two propositions were made by it; ample time was allowed for accept-

ance or refusal; the appellee did not accept; the non-acceptance and silence was equivalent to a refusal of the proposition, and the appellant properly proceeded to condemn; and the circuit court should have appointed the commissioners for that purpose, and has erred in not doing so.

The proceedings, having been commenced before the 1st day of April, 1869, are not affected by the repealing act of the new Code, and the proceedings hereafter may be either under the terms of the charter, which is not repealed, or conform as far as practicable to the provisions of chapter 42 of the Code of West Virginia.

The judgment must be reversed, with costs against the appellee, and the case remanded to the circuit court of Wood county to be proceeded with.

The other judges concurred.

JUDGMENT REVERSED.