# Richmond

BLONDELL AND OTHERS v. GUNTNER AND OTHERS.

November 11, 1915.

1. EMINENT DOMAIN—*How Power Exercised.*—The right of eminent domain must be exercised in this State upon such terms, and in such manner, and for such public uses as the legislature may direct.

2. EMINENT DOMAIN—*Railroads—What Title Passes—Sale of Excess—Change of Location—Reverter.*—Under section 1079 of the Code, where land is condemned by a railroad company for its purposes, and the sum ascertained to be due the land owner is paid to him or into court, the absolute fee-simple title to the land (and not a base fee) is vested in the company, and there is no reverter to the former owner except in the single case provided for by section 1089 of the Code where the company afterwards changes its location. If there be no change of location, the company can sell and convey title to any excess beyond its needs of the land condemned.

Error to a judgment of the Circuit Court of Wise county in an action of ejectment. Judgment for the defendants. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*R. T. Irvine* and *C. R. McCorkle,* for the plaintiffs in error.

*Vicars & Peery, C. T. Duncan* and *E. M. Fulton,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

This is an action of ejectment brought by Blondell and others in which there was a judgment for the defendants. The

plaintiffs in the circuit court were the heirs at law of T. A. Blondell, who died sometime in the year 1887, leaving surviving him his wife, Sarah Blondell, and nine children.

Sometime prior to the 20th of May, 1889, the Louisville and Nashville Railroad Company, a duly incorporated railroad company under the laws of Kentucky, determined to extend its line of railway into the State of Virginia. With that object in view, it instituted condemnation proceedings in the county court of Wise county, which resulted in the acquisition by the railroad company of the land now in dispute. It appears that on March 19, 1909, the Louisville and Nashville Railroad Company sold to J. W. Guntner a small part of the 4 1-5 acres of the Blondell tract which it had condemned, and Guntner in turn sold to the defendants, Stallard, Allen and others, who were in possession and claimed title against the plaintiffs at the date of the institution of this action.

The case was submitted to the circuit court without the intervention of a jury, upon an agreed state of facts, which we have presented sufficiently to enable us to apply the law which must control our judgment in the premises.

By section 1079 of the Code of 1887, which was in force when the proceedings under review in this case took place, it is provided, that upon payment of the sum ascertained to be due the land owner, "the title to that part of the land for which such compensation is allowed shall be absolutely vested in the company, county, city, town, institution, or asylum, in fee simple, except in the case of a turnpike company, where a sufficient right of way only for the purposes of such county shall be vested."

However the law may be elsewhere, it is well settled in Virginia that the right of eminent domain must be exercised upon such terms and in such manner and for such public uses as the legislature may direct. *Roanoke City* v. *Berkowitz,* 80 Va. 616.

The court, in that case, after quoting from the statute then

in force (Code 1873, ch. 56, sec. 11), which provided that the sum ascertained by the commissioners to be just compensation may be paid to the person entitled thereto, or into court, and upon such payment title to that part of the land for which such compensation is allowed shall be absolutely vested in the company, county or town in fee simple, except in case of a turnpike company, where sufficient right of way only for the purpose of such company shall be vested, then proceeds as follows: "It is difficult to see how language could be plainer or less liable to misconstruction. The requirement is imperative that the fee shall be vested, except in the single case of a turnpike company, where an easement only is acquired: . . ."

In *City of Charlottesville* v. *Maury,* 96 Va. 383, 31 S. E. 520, this court said: "It is well settled, where the legislature has defined the interest or estate which shall be taken under condemnation proceedings, that no less interest or estate than that specified can be taken." "There is no better settled rule of law," said Judge Buchanan, "than this, that statutes which encroach on the personal or property rights of the individual are to be strictly construed, and this is especially the case where it is claimed that the statute delegates to a corporation, whether municipal or private, the right of eminent domain, one of the highest powers of sovereignty pertaining to the State itself, and interfering seriously and oftentimes vexatiously with the ordinary rights of property."

By section 1089 of the Code of 1887 it is provided: "Notwithstanding a company may have a location of lands for its purposes, and proceeded to ascertain the compensation therefor, the company may afterwards change its location from time to time, as often as it may see cause; and proceedings may be had to ascertain what will be a just compensation for the lands upon any such new location and the work may be constructed upon or through the same, and the title to such lands obtained in like manner as if it were the first location. But

whenever such change of location shall be made, the title to the lands condemned for the former location shall revert to the original owner, his heirs or assigns."

It is earnestly insisted by counsel for the plaintiff in error that our statute, section 1079, while it in terms declares that the condemning company shall acquire a fee in the lands condemned, really means, not a fee simple in the sense in which that term is ordinarily used, but that under it there only passes a limited or conditional fee—a base fee—and that as soon as the railroad company abandoned or ceased to use any part of the lands for the purposes for which it was authorized to condemn them, the title reverted by operation of law to the original owner, or his heirs.

As was said by this court in the case already cited, it is difficult to see how language could be plainer or less liable to misconstruction; the requirement is imperative, that the fee shall be vested, except in the single case of a turnpike company. There seems to be no room for the suggestion that a base or qualified fee was intended. The meaning of the legislature is emphasized by section 1089, which provides that the lands condemned shall revert to the original owner whenever there is such a change of location as is contemplated by that section. We have then the rule stated in clear and explicit language that the interest condemned shall be a fee simple, and we have the exception stated when the condemnor is a turnpike company, and we have the solitary instance of a reverter to the original owner given whenever a change of location shall be made.

In the agreed statement of facts, paragraph 20, it is said: "That the line of road of the Louisville and Nashville Railroad Company, and also of the Virginia and Southwestern Railway Company, as originally surveyed and constructed through said 4 1-5 acres of land, have never been changed, but have always since the construction thereof been used and operated by the said roads, and the South Atlantic and Ohio Railroad, predecessor in title of the Virginia and Southwestern Railway

Company, respectively, and are still being so used and operated as originally located and constructed."

By the agreed statement of facts we think it plainly appears that the change of location contemplated by section 1089 has never taken place; and upon the whole case we are of opinion that there is no error in the judgment of the circuit court, which is affirmed.

*Affirmed.*