## MEYER, ET AL. v. COLORADO CENTRAL COAL CO.

(No. 1513; October 30, 1928; 271 Pac. 212)

(Rehearing Denied March 5, 1929; See 274 Pac. 1074)

*W. E. Clark* of Denver, Colorado, and *James A. Greenwood* of Cheyenne, for plaintiffs in error.

*F. D. McMillan* and *Harry B. Henderson, Jr.,* for plaintiff in error.

RINER, Justice.

This is a proceeding in error to review an order of the District Court of Carbon County, Wyoming, made October 25, 1927, overruling a motion of plaintiffs in error to vacate and set aside a "final order and decree" of that court made some three years previously. The facts disclosed by the record are substantially as follows:

Under the provisions of Chapter 316 (Sec. 4938, as amended by Laws of 1921, c. 75, Sec. 4939 et seq.), W. C. S. 1920, on September 12, 1924, the Colorado Central Coal Company, hereinafter referred to as the "coal company," filed in the District Court of Carbon County its petition against R. D. Meyer, et al., subsequently mentioned herein as "the owners," seeking to condemn a strip of land fifty feet on each side of a described line of survey, as stated in said petition, "in fee simple to the plaintiff and to its successors and assigns forever," for a "way of necessity for railway track-

age sidings, spur tracks and tramways'' over and across said land, for the transportation of coal from the coal company's mine to the line of the Union Pacific railroad. The petition asked that the court appoint three impartial appraisers of the property thus sought to be taken and fix the time and place of their first meeting and the time for making their report.

Previous to the filing of such petition, due notice of its proposed filing was given the owners, as required by Section 4941—the one resident of the state but not of Carbon county being notified by substituted service, and all the owners —resident as well as non-resident—by constructive service through publication. On October 4, 1924, the coal company appearing by its counsel—the owners not having appeared or objected to the proceeding in any way, the court entered an order finding the allegations of the petition to be true, except that the value of the premises to be taken and the damages to be incurred by reason of such taking, should be determined by named appraisers, whose first meeting was fixed, and the time for filing whose report was likewise duly noted therein. Thereafter the appraisers, thus selected, qualified and within the extended time fixed by the court, on October 27, 1924, filed their report, fixing the value of the land taken and the damages to the owners' other lands for such appropriation. Neither upon the coming in of this report nor within fifteen days following, as allowed by Section 4945, W. C. S. 1920, did the owners file any objections, or applications for a jury trial, and on December 3, 1924, a final order and decree was entered by the court confirming the award of the appraisers and adjudging, among other things, that ''the title in fee simple to all the said strip of land is hereby passed from the said owners and defendants and each and all of them to'' the coal company, ''its successors and assigns forever, free and clear from all claims of the defendants and each and all of them and all persons claiming through or under them in any manner whatsoever.'' No proceedings in error or appeal to review

this order were ever instituted. Meanwhile, in 1926, a spur railroad track of standard gauge was built by the coal company upon the land thus appropriated, extending from the main line of the Union Pacific Railroad Company to the coal company's property.

Nothing further appears to have been done by any of the parties until May 17, 1927, when the owners, or those who succeeded to their rights by contract or conveyance, filed in the District Court of Carbon County a motion to set aside the final decree of December 3, 1924, above mentioned, because of claimed "irregularity in and about the proceedings pertaining to the securing of said order and decree, in that due process of law has not obtained and both the statutory and constitutional provisions of the State of Wyoming have been violated." This motion was heard upon argument and affidavits and on October 25, 1927, the court entered an order denying said motion, and, as already indicated, it is to review that order that these proceedings in error are brought.

While some other and inconsequential matters were suggested by the briefs and argued by counsel, the real and controlling question in the case is whether the decree of condemnation violated the constitutional and statutory law of this state, when it assumed to give to the coal company a fee simple title to the land appropriated. The claim is that only the surface right and perhaps necessary support therefor could be awarded to the coal company by the decree attacked. It is said that Chapter 316, supra, in its purport "tends to and does limit the 'way of necessity,'" for which Section 4938, as amended, permits the taking of another's land "to the surface." But an examination of the statute, we think, shows that this is not so.

Section 4946, W. C. S. 1920, wherein the legislature undertook specifically to define the effect of the order of condemnation and the nature of the interest transferred by it, after declaring that a certified copy thereof shall be recorded and indexed in the office of the county clerk "in like

manner, and with like effect, as if it were a deed of conveyance from the said owners and parties interested, to the person, association of persons, company or corporation seeking to take and acquire real property as by this act provided, their heirs, successors or assigns,'' provides:

''Upon the entry of such order the said petitioner shall become seized in fee of all such property described in said order as is required to be taken as aforesaid, and may take possession of and hold and use the same for the purpose specified in said petition, and shall thereupon be discharged from all claims for any damages by reason of any matter specified in such petition, certificate or verdict, or in the order of the court.''

This language would in itself seem to be an unmistakable declaration on the part of the legislature that the fee title to the land condemned should pass. This conclusion is additionally supported by the latest expression of the legislative will on the subject in Chapter 75, Laws of 1921, where Section 4938 was amended, and we find a final clause added to the mentioned section reading:

''whenever any person, association of persons, company or corporation, in any condemnation proceedings hereunder, shall claim only a surface right of way over any lands sought to be condemned and shall waive all claim to all, or any part of, the underlying minerals, then, and in that case no award of damages shall be made on account of such underlying minerals but such award shall take into account only the actual rights and property claimed and appropriated.''

This language would appear to be without meaning unless the fee of the land were to be taken. In our opinion, therefor, the order does not do violence to the statutes under which it was drawn, but appears to be in full accord with them.

It is argued that if the statute does permit a fee to be taken for a way of necessity, under the circumstances and

for the purposes defined by the enactment, that this is in violation of the Wyoming Constitution. And we are referred to Sections 6, 32 and 33 of Article 1 of that instrument. Section 6 provides:

"No person shall be deprived of life, liberty or property without due process of law."

Section 32 reads:

"Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

And Section 33 supplements the section last mentioned in this language:

"Private property shall not be taken or damaged for public or private use without just compensation."

Constitutional provisions of the character appearing in Sections 32 and 33, supra, are not unusual, especially in the western states of the Union. The states of Washington, Colorado and Arizona, beside our own, have them. The courts of those states have considered the meaning of the phrase "way of necessity," as it thus appears in their constitutions, and it has been held that the legislature may define them and establish procedure to make the right thereto available. See State, ex rel. Mountain etc. Co. v. Superior Court, 77 Wash. 585, 137 Pac. 995; Inspiration etc. Co. v. New Keystone Copper Co., 16 Ariz. 257, 144 Pac. 277; Crystal Park Co. v. Morton, 27 Colo. App. 74, 146 Pac. 567. See also Grover etc. Co. v. Lovella Ditch Co., 21 Wyo. 204, 131 Pac. 43, L. R. A. 1916c, 1275, Ann. Cas. 1915d, 1207, where, in the course of a discussion of the effect to be given these sections of our constitution, it is said:

"A private use for any of the purposes mentioned in Section 32 is given the same force and effect as a public use, and no greater."

And in State, ex rel. Mountain etc. Co., v. Superior Court, supra, it is remarked:

"The taking of private property for private use for the promotion of the general welfare upon due notice and hearing and the payment of compensation is not incompatible with due process of law as guaranteed by the federal Constitution. Head v. Amoskeag Mfg. Co., 113 U. S. 9, 5 Sup. Ct. 441, 28 L. Ed. 889."

Chapter 316, with its amended initial Section 4938, obviously was enacted to define the interest which should pass under the constitutional way of necessity and to establish a proper way of procedure to obtain it.

In last analysis it would seem, then, that the disposition of the case before us must turn upon the solution of the query, what interest may be authorized by the legislature to be taken under the constitutional authority granted to condemn land for right of way purposes? Concerning this question the weight of authority is undoubted. In 20 C. J. 1221, Sec. 582, citing many supporting cases in the notes, this language is used:

"With respect to the extent of the interest which the condemnor may be empowered to take, it is well settled that it is solely within the province of the legislature to determine, subject, of course, to constitutional provisions. Thus the legislature may authorize the taking of a fee, or any less estate or interest such as an estate for years or for life, or merely an easement."

2 Nichols on Eminent Domain, 919, says:

"And although an easement is often all that is condemned, if it is provided by the statute that the fee shall be taken the courts have no ground for interference."

Another well known and frequently cited text writer on the subject, Mr. Lewis, uses this language, in 2 Lewis on Eminent Domain, (3d Ed.) Sec. 448:

"In the absence of any constitutional restraint, it rests with the legislature to say what interest or estate in lands shall be taken for public use. The whole matter thus being in the discretion of the legislature, it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken, according to its views of the requirements of the grantee and the demands of the public good."

Judge Cooley, in his work on Constitutional Limitations (Vol. 2, 8th Ed., 1927, page 1194), has stated the rule and its reasons to be:

"It seems, however, to be competent for the State to appropriate the title to the land in fee, and so to altogether exclude any use by the former owner, except that which every individual citizen is entitled to make, if in the opinion of the legislature it is needful that the fee be taken. The judicial decisions to this effect proceed upon the idea that, in some cases, the public purposes cannot be fully accomplished without appropriating the complete title; and where this is so in the opinion of the legislature, the same reasons which support the legislature in their right to decide absolutely and finally upon the necessity of the taking will also support their decision as to the estate to be taken. The power, it is said in one case, must of necessity rest in the legislature, in order to secure the useful exercise and enjoyment of the right in question. A case might arise where a temporary use would be all that the public interest required. Another case might require the permanent and apparently the perpetual occupation and enjoyment of the property by the public, and the right to take it must be co-extensive with the necessity of the case, and the measure of compensation should of course be graduated by the nature and the duration of the estate or interest of which the owner is deprived."

In United States, etc. Co. v. Delaware, etc. R. Co., 62 N. J. L. 254, 41 Atl. 759, 42 L. R. A. 572, this language was used:

"It is within the power of the legislature, in authorizing land to be condemned for a public use which may be permanent, to determine what estate therein shall be taken, and to authorize the taking of a fee, or any less estate, in its discretion. Where a statute authorizes the taking of a fee, it cannot be held invalid, or that an easement only was acquired thereunder, on the ground that an easement only was required to accomplish the purpose which the legislature had in view. That is a legislative, and not a judicial, question. Sweet v. Railway Co., 79 N. Y. 293, 299, 300; Commissioners v. Armstrong, 45 N. Y. 234."

As expressive of the rule of New York on this subject, in the case of In Re Water Front in City of New York, 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. (N. S.) 1335, it is said:

"It is the settled law of this state that the character and quantity of the estate in lands to be acquired for public use rests wholly in the determination of the Legislature. It may, as in this case it has, authorize the acquisition of the fee in which case there is no right of reversion left in the original owner."

To the same effect is Blondell v. Guntner, 118 Va. 11, 86 S. E. 897. Mr. Justice Brewer, then of the Supreme Court of Kansas, in Challis v. Atchison-Topeka, etc. R. Co., 16 Kans. 117, used this language:

"Chap. 124 of the laws of 1864, entitled 'An act to enable railroad companies to acquire title to lands for railroad purposes,' prescribes the steps to be pursued in these condemnation proceedings; and in Sec. 4 it is provided that, 'to such portions of such road * * * title in fee simple shall vest in such company, its successors and assigns.' This language is plain, and susceptible of but one construction. The clear intent of the legislature was, that the railroad companies should acquire a perfect and

absolute estate, and not simply an easement. This being the clear meaning of the statute, the power of the legislature to enact it is challenged. It is said that ''the right to appropriate private property to public use has always been limited to the actual necessities of such use,' and that an easement is all that is necessary to secure to the railroad company the fullest possible enjoyment of the land for its purposes. All this may be true; but the question of necessity is one for the legislature and not for the courts.''

After quoting from Cooley's Constitutional Limitations and citing many cases, this eminent jurist, referring to the case of DeVaraigne v. Fox, Fed. Cas. No. 3836, 2 Blatch, C. C. 95, continues:

''In this last case the law is thus stated: 'In the exercise of its power to devote private property to public use, the legislature are the exclusive judges of the degree and quality of interest which are proper to be taken, as well as the necessity for taking it.' ''

The comparatively recent case of Pifer v. Board of Education, 25 Ohio Ct. of App. 469, 159 N. E. 99, was one where the Board had previously condemned an acre of ground belonging to plaintiff, for school purposes—a play ground adjacent to a rural school. Some years later, the schools being centralized this school land was abandoned and the Board advertised it for sale. Thereupon plaintiff brought this action to obtain an injunction forbidding such sale, to quiet his title to the land as against the Board and to obtain possession of it by reason of the Board having abandoned it for school purposes. As stated by the court:

''The sole question at issue in this case is whether or not the board of education, in appropriating the one acre of land in question, obtained an absolute estate in fee simple, with the right and privilege of disposing of the property in such manner as it might see fit, according to

law, and can sell the property to private parties, or whether the fee simple title obtained by the board was a conditional fee, by which the land in question, when abandoned for school purposes, reverted to the original owner, his heirs or assigns, from whom the land had been taken by the appropriation proceedings.''

The statutory law of Ohio on the subject was stated in the opinion to be:

"Section 7624, General Code, provides that, when a board of education finds it necessary, and desires, to appropriate lands for school purposes, 'the same proceedings of appropriations shall be had which are provided for the appropriations of private property by municipal corporations.'

"Although the laws of Ohio for many years provided a method for the appropriation of private property by a municipal corporation, it was not until 1906 that the Ohio Legislature (98 Ohio Laws, p. 164, sec. 18) for the first time provided what the effect of payment or deposit, as ordered by the court, should be in appropriation proceedings by a municipal corporation, by inserting in the statute the words 'and upon the payment or deposit, by the corporation, of the amount assessed, as ordered by the court, an absolute estate in fee simple shall be vested in said corporation, unless a lesser estate or interest is asked for in the application, in which case such lesser estate or interest as is so asked for shall be vested.''

In dismissing the action, the court said:

"From these and other provisions, adopted for the first time in the same act, and from the discussions of our courts in their opinions as to whether or not a 'fee-simple absolute' or a 'fee-simple conditional' has been acquired in a particular case, and the Legislature having used the words 'absolute estate in fee simple,' it is apparent that it was the purpose and intent of this legislation to provide that an absolute estate in fee simple should be acquired by a municipal corporation, with the right to dispose of it according to law for public or private uses as it may deem best suits the needs of such municipality, and to thus definitely settle the question of the kind of a

fee a municipal corporation acquires in appropriation proceedings, unless a lesser estate is asked for in the application. White v. City of Cleveland, 14 Ohio Cir. Ct. R. (N. S.) 369.

"By reference, under Section 7624, General Code, the same rule applies to boards of education.

"The entire record of the appropriation proceedings of the land in question here is in evidence, and it discloses that the application states that the 'board desires to acquire a fee simple estate in and to said property for the purposes above set forth, and as provided by the General Code of Ohio governing such matters.' The whole record of the proceedings is in harmony with the application, and there is nothing to indicate that the board desired any lesser estate."

The plaintiff, in Hays v. Walnut Creek Oil Co., 75 W. Va. 263, 83 S. E. 900, Ann. Cas. 1918A, 802, sought an accounting for the oil produced from some eight wells drilled by the Walnut Creek Oil Company on a strip of land theretofore taken by condemnation through the lands owned by him to the Charleston, etc. R. Co. for its roadway. This strip of land was thereafter conveyed by the latter to the lessor of the Walnut Creek Oil Company. From the statement of the case we take the following excerpt:

"By the judgment of condemnation, in accordance with Sections 18 and 22, Chapter 42, Code 1891, showing compliance by the condemnor with all of the provisions of these Sections, it was ordered that 'the legal title to the land described in said report is therefore absolutely vested in fee simple in said applicant.' The language of said Section 18, after the provisions relating to the report of the commissioners on the verdict of the jury, and payment of the sum assessed as damage, is:

" 'Upon such payment the title to that part of the land so paid for, shall be absolutely vested in fee simple in the applicant, except that in case of a turnpike or other road (not including, however, a railroad) the right of way only shall be so vested.'

"Said Sections 18 and 22, in force when said proceedings were had, were amended by Chapter 68, Acts 1891, and the proviso then added to Section 18, and the addendum to Section 22, shed light on the proper construction to be given thereto. The proviso to Section 18 is as follows:

" 'Provided, That a railroad company desiring to contruct a bridge, viaduct, or tunnel may, as to all or any part of the real estate sought to be taken for that purpose, describe in its application an estate or interest therein less than a fee; and with respect to the same, may proceed as in other cases; and upon payment therefor, such estate and interest as is stated and described in the application, shall vest in the applicant. But when less than a fee is taken, in assessing damages the commissioners and jury shall take into consideration the actual damage that is done or that may be done to the fee, by the construction of such bridge, viaduct or tunnel.' "

In affirming a decree for defendants, the court said in part:

"Upon the pleadings and proofs the sole question presented for decision is, whether by these provisions of the statute law of this state and the proceedings of condemnation had by the condemnor thereunder, the railroad is entitled to an absolute fee simple estate in the land condemned, as the Walnut Creek Oil Company and its lessor contend, or only a base or conditional fee—an interest less than a fee simple absolute, as the plaintiff contends.

"Taking the plain language of the statute there would seem to be no room for construction, or controversy as to what the legislature meant by an estate 'absolutely vested in fee simple in said applicant,' unless as the applicant may now do, under the statute as amended in 1897 and 1907, by so stating in its application, propose to take less than a fee, and the judgment be accordingly. In Virginia, under a statute practically the same as ours before the amendments referred to, the Supreme Court held that an interest less than a fee could not be taken in condemnation. Charlottesville v. Maury, 96 Va. 383, 31 S. E. 520; Roanoke City v. Berkowitz, 80 Va. 616. The second point of the syllabus in the latter case is:

" 'Corporations condemning land under Code 1873, Chapter 56, Section 11, must take and pay for the fee-simple, and not merely an easement, except it be a turn-pike company.'

"Eminent domain being an attribute of sovereignty, unlimited by the Constitution, it cannot be controverted that the State, through its legislature, in the exercise of its high prerogative, may take or authorize a public service corporation to take, any estate in land dictated by its sovereign will. The only ·constitutional limitation on the power is that private property shall not be taken or damaged for public use without just compensation, and when taken by a corporation for internal improvement not until just compensation has been paid or secured to be paid. If authority were needed to support these fundamental principles of government, our own and the decisions of other states are replete with a statement of them. West Virginia Transportation Co. v. Volcanic Oil & Coal Co., 5 W. Va. 382. * * *

"On principle and in the face of these authorities, we do not see how it is possible for us to cut down and limit the plain language of our statute to a mere easement or conditional or base fee in the land taken. No matter what such a right might be called, such a construction would render the estate a mere right of way or easement. The language of the statute in force when the land in controversy was taken and the subsequent amendments referred to make clear the legislative intent, when called for, to invest in the condemnor a fee simple absolute. * * *

"Whether the granting of an estate in fee simple absolute to a public service corporation, such as a railroad, is good public policy, is a legislative not a judicial question. It is a subject with which the courts have nothing to do."

In view of these authorities, we cannot say that the Legislature has transgressed the limitations imposed upon it by our Constitution when it permitted the fee to be taken by the coal company in the land involved in the case at bar.

The record shows, and the brief of the owners of the land intimates, that one of the chief causes of complaint in this matter was the inadequacy of the award fixed by

the appraisers and confirmed by the court. But the trouble with such a criticism of the condemnation proceedings below is that the owners had full opportunity afforded them to appeal from the award and to lay before a jury what they considered the full market value of the land, including its mineral content, as well as all the damages claimed by them to have been inflicted upon their lands adjacent to the strip taken in consequence of such taking. Yet they never availed themselves of the opportunity. The coal company's petition and its published and served notice distinctly stated that the fee of the land would be taken. Under such circumstances the owners cannot very well be heard to say that the compensation fixed by the appraisers and the court is insufficient. In Boulter v. Cook, 32 Wyo. 461, 236 Pac. 245, quoting from the case of Masters v. Holland, 12 Kans. 17, this language was used:

"Every one having a matter in litigation before any tribunal court or county board, must, in order to protect his rights, be present at every session at which the controversy may be determined, until there is a final disposition. He stays away at his peril; and if during his absence the matter is disposed of he can blame no one but himself. This in many cases is a great hardship. Many a suitor in the courts has felt it so, yet no remedy therefor has as yet been devised."

As we find no error in the record, the order of the District Court of Carbon County under review is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.

ON PETITION FOR REHEARING

RINER, Justice.

An examination of the extended petition for rehearing filed by plaintiffs in error does not show that any new questions are presented by it which were not carefully considered by this court in the preparation of its opinion heretofore filed herein. It would serve no useful purpose to review all of the authorities now cited in the petition before us which were not mentioned in the preceding briefs of plaintiffs in error. Suffice it to say that most of them are not in point, one or two appear to announce conclusions which we could not follow without doing violence to the plain language and intention of the law-making power of this state and without disregarding the unquestioned weight of authority, as we find it, while some of the citations are in full accord with views already expressed by us concerning this case. For example, the case of The Smith Canal etc. Co. v. The Colo. etc. Co., et al., 34 Colo. 485, 82 Pac. 940, 3. L. R. A. (N. S.) 1148, is mentioned and extensively quoted from by plaintiffs in error. In the quotation used we find this: ''Bearing in mind that the petitioner asked only for a right of way and taking the construction which in its complaint the plaintiff itself has made of its own right, we are of opinion that merely a right of way or easement is acquired.'' In the case at bar, the petition in condemnation specifically asked for the fee simple title forever to the property sought to be taken. The distinction between the several sets of facts is clear. Again, liberal quotation is made by counsel from the opinion in Chambers v. Great Northern etc. Co., 100 Minn. 214, 110 N. W. 1128. The statute there involved was radically different in its phraseology from that under consideration here. In the course of the quotations thus presented to us, this language appears: ''Conceded that the Legislature might have endowed the company with the power

to acquire title in fee absolute for such purposes, we are very clear that it failed to do so.''

Inasmuch as we still think that our previous opinion correctly disposed of this case, the petition for rehearing will be denied.

*Rehearing denied.*

BLUME, C. J., and KIMBALL, J., concur.