**WYMO FUELS, INC., Appellant (Respondent),**

**Environmental Quality Council, Department of Environmental Quality, (Respondents)**

v.

**Guy W. EDWARDS, Ruth A. Edwards, Clarke K. Mills, and Doris I. Mills, Appellees (Petitioners).**

**ENVIRONMENTAL QUALITY COUNCIL, DEPARTMENT OF ENVIRONMENTAL QUALITY, Appellants (Respondents),**

**WYMO Fuels, Inc., (Respondent),**

v.

**Guy W. EDWARDS, Ruth A. Edwards, Clarke K. Mills, and Doris I. Mills, Appellees (Petitioners).**

Nos. 85–227, 85–228.

Supreme Court of Wyoming.

Aug. 14, 1986.

Alan B. Minier and Thomas A. Nicholas, Hirst & Applegate, Cheyenne, for appellant WYMO.

A.G. McClintock, Atty. Gen. and Steven R. Shanahan, Sr. Asst. Atty. Gen., Cheyenne, for appellants Wyoming Environmental Quality Council and Wyoming Dept. of Environmental Quality.

Tom C. Toner, Redle, Yonkee & Arney, Sheridan, for appellees Edwards.

Rebecca W. Thomson and Richard M. Davis, Jr., Burgess & Davis, Sheridan, for appellees Mills.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Chief Justice.

The issue to be resolved in this case is whether condemnation of a way of necessity for a railroad spur track and a mine truck haul road, according to statute, dispenses with the statutory requirement that a resident or agricultural landowner or a surface landowner consent to mining operations, or an order in lieu of such consent in the case of the latter kind of ownership, be included in an application for a mining permit. The Department of Environmental Quality ruled that the resident or agricultural or surface landowner consent was not required because if it were, the right acquired pursuant to the eminent domain proceeding would be defeated. The district court held that an owner of land which had been condemned for such an easement was a surface owner for purposes of the mining permit statute and that consent, or, if appropriate, an order in lieu thereof, still must be included in the mining permit application after the condemnation order was entered. Other incidental issues are asserted by the parties, but essentially the dispute is resolved by our determination of this primary issue. We hold that after condemnation of such an easement the owner of the servient estate is not a surface owner for purposes of the mining permit application statute, and we reverse the order of the district court.

The several parties in these cases have submitted detailed statements of the issues.[1] The cases are resolved, however, by

1. The parties set forth the issues in their respective briefs as follows:

Appellant WYMO Fuels, Inc.:

"A. DID THE ENVIRONMENTAL QUALITY COUNCIL ERR IN REFUSING TO REQUIRE EVIDENCE OF SURFACE OWNER CONSENT OBTAINED FROM APPELLEES MILLS OR EDWARDS PURSUANT TO W.S. 1977, § 35–11–406(b)(xi)?

"B. DID THE ENVIRONMENTAL QUALITY COUNCIL MAKE ITS DECISION ON THE PERMIT APPLICATION IN ACCORDANCE WITH ALL PROCEDURES AND STANDARDS REQUIRED BY LAW?"

Appellants Department of Environmental Quality and Environmental Quality Council:

"I. DID THE ENVIRONMENTAL QUALITY COUNCIL ERR IN REFUSING TO REQUIRE A COAL MINE APPLICANT TO SHOW EVIDENCE OF CONSENT FROM SURFACE LANDOWNERS ADJACENT TO THE LAND TO BE MINED IN ACCORDANCE WITH W.S. 35–11–406(b)(xi)?

"II. WAS THE ENVIRONMENTAL QUALITY COUNCIL'S DECISION TO REQUIRE THE APPELLEES TO MAKE A PRIMA FACIE CASE ON THEIR OBJECTIONS TO A COAL MINE PERMIT IN ACCORDANCE WITH ACCEPTABLE PROCEDURES AND STANDARDS REQUIRED BY LAW?"

Appellees Mills:

"1. Is Mills a resident or agricultural landowner or a surface owner under the terms of the landowner consent statute, § 35–11–406(b)(xi)(xii)?

"2. Was the decision of the Council that Mills was not a resident or agricultural landowner supported by substantial evidence?

"3. Does the fact that Mills' property was condemned by WYMO for part of its mine

disposition of these issues as presented by the parties:

Appellant WYMO Fuels, Inc.:

"A. DID THE ENVIRONMENTAL QUALITY COUNCIL ERR IN REFUSING TO REQUIRE EVIDENCE OF SURFACE OWNER CONSENT OBTAINED FROM APPELLEES MILLS OR EDWARDS PURSUANT TO W.S. 1977, § 35-11-406(b)(xi)?"

Appellants Department of Environmental Quality and Environmental Quality Council:

"I. DID THE ENVIRONMENTAL QUALITY COUNCIL ERR IN REFUSING TO REQUIRE A COAL MINE APPLICANT TO SHOW EVIDENCE OF CONSENT FROM SURFACE LANDOWNERS ADJACENT TO THE LAND TO BE MINED IN ACCORDANCE WITH W.S. 35-11-406(b)(xi)?"

Appellees Mills:

"3. Does the fact that Mills' property was condemned by WYMO for part of its mine permit area negate the statutory requirement for landowner consent to the mine and reclamation plan?"

Appellees Edwards:

"3. Does a condemnation order granting an applicant for a mining permit an easement to use a landowner's property for a coal haul road and a railroad spur line dispense with the surface owner consent requirements of the Wyoming Environmental Quality Act?"

As a preliminary matter, we also will address the question raised by the appellees Edwards as to whether a final, appealable order or judgment was entered by the district court.

WYMO Fuels, Inc. (hereafter WYMO) proposed to mine coal under lands owned by the State of Wyoming in the Powder River Basin. Processing facilities were to be located on lands owned by WYMO. On October 7, 1980, WYMO filed an application for a mining permit with the Land Quality Division of the Department of Environmental Quality. The Edwards and the Mills are sheep ranchers who own lands adjoining the lands to be mined by WYMO. Both the mine truck haul road and the railroad spur track contemplated by the permit application as necessary for the mining operations would traverse the lands of both the Mills and the Edwards. The application for the mining permit was rejected because it did not include the landowner consents according to the statute.

Section 35-11-406(b), 406(b)(xi) and (xii), W.S.1977, provides in pertinent part:

permit area negate the statutory requirement for landowner consent to the mine and reclamation plan?

"4. Does the fact that the utility power line corridors, built solely to service the WYMO mine, is owned by Tri-County Electric exempt it from the landowner consent provisions, § 35-11-406(b)(xi)(xii)?

"5. Did the Council observe the procedures required by law when it shifted the burden of proof from the Appellant WYMO to the Appellees?"

Appellees Edwards:

"1. Is the order of the District Court reversing and remanding the decision of the Environmental Quality Council for a new hearing a final, appealable order or judgment?

"2. Do the surface consent requirements of the Wyoming Environmental Quality Act apply to all lands within the permit area upon which surface mining operations are to be conducted or only to the lands which will be mined?

"3. Does a condemnation order granting an applicant for a mining permit an easement to use a landowner's property for a coal haul road and a railroad spur line dispense with the surface owner consent requirements of the Wyoming Environmental Quality Act?

"4. Has WYMO met the surface owner consent requirements of the Wyoming Environmental Quality Act for its power lines and utility corridors which are required to be in the permit area but for which WYMO does not have landowner consent for such utilities and does not have a condemnation order granting WYMO the right to place such utilities on Appellees' lands?

"5. Did the Environmental Quality Council improperly shift the burden of proof in the contested case hearing from the Appellant WYMO, who is the applicant for the mining permit, to the Appellees, who are the landowners?"

"(b) The application shall be accompanied by * * *

\* \* \* \* \* \*

"(xi) * * * [A]n instrument of consent from the resident or agricultural landowner, if different from the owner of the mineral estate, granting the applicant permission to enter and commence surface mining operation, and also written approval of the applicant's mining and reclamation plan. As used in this paragraph, 'resident or agricultural landowner' means a natural person or persons who, or a corporation of which the majority stockholder or stockholders:

"(A) Hold legal or equitable title to the land surface * * * acquired prior to January 1, 1970, * * *

"(B) Have their principal place of residence on the land, or personally conduct * * * ranching operations upon a * * * ranch unit to be affected by the surface mining operation, * * *.

"(xii) * * * [A]n instrument of consent from the surface landowner * * * to the mining and reclamation plan. If consent cannot be obtained as to the mining plan or reclamation plan or both, the applicant may request a hearing before the environmental quality council. The council shall issue an order in lieu of consent if it finds:

"(A) That the mining plan and reclamation plan have been submitted to the surface owner for approval;

"(B) That the mining plan and the reclamation plan is detailed so as to illustrate the full proposed surface use including proposed routes of egress and ingress;

"(C) That the use does not substantially prohibit the operations of the surface owner;

"(D) The proposed plan reclaims the surface to its approved future use, in segments if circumstances permit, as soon as feasibly possible."

\* \* \* \* \* \*

The Mills and the Edwards had refused to negotiate with WYMO for easements across their lands. Apparently their position was mandated by 20–year leases of surface rights to their lands which they previously had entered into with Neil Butte Company. When landowner consent for the railroad spur track and the mine truck haul road was sought from the Mills and the Edwards, WYMO was referred to Neil Butte Company, and it was not successful in obtaining that consent. The circumstances indicate that Neil Butte Company preferred to preserve its competitive position with respect to mining coal, although it never has obtained a mining permit.

Frustrated by the apparent refusal of the Mills, the Edwards, and Neil Butte Company to negotiate and agree to an easement for the railroad spur track and the mine truck haul road, WYMO proceeded in the United States District Court for the District of Wyoming to condemn the necessary easements pursuant to § 1–26–401, W.S. 1977, [since repealed by S.L. of Wyoming 1981, ch. 174, § 3, and now appearing at § 1–26–815, W.S.1977 (1986 Cum.Supp.); S.L. of Wyoming 1981, ch. 174, § 1]. The statute pursuant to which WYMO Fuels proceeded provides in pertinent part:

"(a) Any person * * * or corporation authorized to do business in this state may appropriate by condemnation a way of necessity over, across or on so much of the lands or real property of others as necessary for the location, construction, maintenance and use of * * * electric power transmission lines, * * * spur tracks * * * or mine truck haul roads required in the course of their business for * * * mining * * * purposes, or for the transportation of coal from any coal mine * * *.

"(b) The right of condemnation may be exercised for the purpose of:

"(i) Acquiring new ways of necessity;

\* \* \* \* \* \*

"(d) A way of necessity for a mine truck haul road shall not be granted except where no other reasonable and practicable way is available. The petitioner for a mine truck haul road way of necessity shall show that his petition is made in

good faith, that no other reasonable and practical way is available and that the mining operation is economically feasible * * *.

 *    *    *    *    *    *

"(f) * * * [T]he way of necessity appropriated is for a surface easement or right-of-way only, and shall not include * * * the underlying minerals or mineral estate. * * * [C]ompensation shall not be awarded for * * * the * * * mineral estate, but only for the actual rights and property claimed and appropriated."

In December of 1980, the United States District Court granted the relief requested by WYMO. The Order Granting Immediate Possession recited in pertinent part that:

" * * * Plaintiff * * * is hereby granted leave to enter upon and take possession of a permanent right-of-way easement to lay, maintain, inspect, replace, erect, operate and remove a railroad spur track and mine truck haul road, and appurtenances, over, through, upon, and across the real property described in the Plaintiff's Complaint for Condemnation immediately upon the Plaintiff's obtaining a mining permit from the Department of Environmental Quality of the State of Wyoming."

WYMO then included the order of the United States District Court for condemnation of the railroad spur track, mine truck haul road and appurtenances as a part of its application for a mining permit. The director of the Department of Environmental Quality issued WYMO a mining permit on September 28, 1981, but on December 21, 1981, the Mills and the Edwards filed their formal objections to this permit acquisition.

The Environmental Quality Council held a hearing on the objections filed by the Mills and the Edwards at the end of March, 1982. The Mills and the Edwards relied upon their status as resident or agricultural landowners as well as their status as surface landowners. On October 1, 1982, the Environmental Quality Council entered its findings of fact and conclusions of law which upheld the issuance of the permit. The order of the Environmental Quality Council states in pertinent part that:

"FINDINGS OF FACT

 *    *    *    *    *    *

"13. The United States District Court, District of Wyoming, The Honorable Clarence Brimmer, after a trial with Protestants issued an Order pursuant to Wyoming Statutes 1–26–401 granting the right of eminent domain to WYMO Fuels over portions of land owned by Protestants Mills and Edwards. The Order granted a permanent easement to the Applicant. The Land Quality Division accepted this Order in lieu of Land Owner Consent. The Order provided that appropriation was dependent upon just compensation being provided to the protestant.

 *    *    *    *    *    *

"CONCLUSIONS OF LAW

 *    *    *    *    *    *

"15. The record does not contain sufficient evidence to support the conclusion that the application for the proposed operation is not accurate and complete as required by the Environmental Quality Act.

 *    *    *    *    *    *

"17. The record does not contain sufficient evidence to support the conclusion that any of the Protestants are resident or agricultural landowners in that there is not a sufficient showing on the record that any of the Protestants have held legal or equitable title to the land surface directly or through stockholdings since before January 1, 1970, or have been acquired through descent, inheritance or by gift or conveyance from a member of the immediate family of such owner.

"18. Landowner consent to disturbance of the access is not required in this case in that the United States District Court for the District of Wyoming, in accordance with Wyoming law, has ordered the

appropriation by the applicant of such lands subject to landowner consent upon the payment of just compensation for such appropriation, and in that the landowners' consent would defeat the right acquired in the eminent domain proceeding."

*    *    *    *    *    *

The Mills and the Edwards filed a petition for review in the district court, pursuant to the Wyoming Administrative Procedure Act (§§ 16–3–101 et seq., W.S.1977) and Rule 12, W.R.A.P., in November of 1982. On August 13, 1985, the district court issued an opinion letter which indicated its intention to reverse the decision of the Environmental Quality Council and remand the case back to the Council. That letter recited in pertinent part:

" * * * [P]etitioners are clearly surface owners and have not consented to the mining and reclamation plans (and the council has not made the findings in lieu of consent).

"The Council decided petitioner's consent was not necessary. In the Council's view they are no longer surface owners because WYMO obtained a rail and haul road easement across their lands by right of Eminent Domain in Federal District Court . * * *. That conclusion cannot stand if the Environmental Quality Act (EQA) is to be given a fair reading."

*    *    *    *    *    *

The order which was entered by the trial court on August 30, 1985, declared:

"IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED by the Court that for the reasons stated in the Court's letter opinion of August 13, 1985, the Findings of Fact, Conclusions of Law and Order entered by the Environmental Quality Council on October 1, 1982 be, and the same is, hereby reversed and remanded for a new hearing."

WYMO, the Environmental Quality Council, and the Department of Environmental Quality have taken their respective appeals from this order of the district court.

■ As a preliminary matter we briefly address the contention of the Edwards as appellees that the order appealed from is not a final, appealable order or judgment. This issue was raised earlier by a Motion to Dismiss the appeal pursuant to Rule 1.05, W.R.A.P. At that time, the court entered an Order Denying Motion to Dismiss Appeal, but the order denying the motion was made without prejudice to the right of the Edwards to renew the issue at oral argument. The court has considered this argument a second time, and we are persuaded that the order of the district court does affect a substantial right of the Environmental Quality Council, the Department of Environmental Quality, and WYMO. In the absence of that order, the issuance of a mining permit by the Department of Environmental Quality to WYMO would be effective, and if the district court were wrong in its ruling with respect to the law, those parties are entitled to test the legal validity of that rule. The order prevents a judgment in favor of the issuance of the permit and therefore is a final appealable order under Rule 1.05(1), W.R.A.P. *Big Horn County Commissioners v. Hinckley*, Wyo., 593 P.2d 573 (1979).

The essential claim of the Mills and the Edwards is that even though a way of necessity has been obtained across their lands by virtue of the condemnation proceedings in the United States District Court, they still have the status of surface owners with respect to the lands crossed by the easement. They insist that because of the provisions of § 35–11–406(b)(xi) and (xii), W.S.1977, they, in effect, have a veto over the permit process because the permit cannot be granted in the absence of their consent. The decree of the United States District Court granted WYMO the right to "enter upon and take possession of a permanent right-of-way easement" for certain purposes. Succinctly stated, the question is, whether after the condemnation the Mills and the Edwards or WYMO held the rights of the surface owner under the statute.

There can be little argument that historically the owner of a mineral estate was permitted to make reasonable use of the surface for the purpose of mineral development. *Sanford v. Arjay Oil Co.*, Wyo., 686 P.2d 566 (1984); 4 Summers Oil and Gas § 652 (1962). See Brimmer, *The Rancher's Subservient Surface Estate*, V Land & Water L.Rev. 49 (1970). A right of access to the land under which minerals were owned was secured by the Constitution and by statute. Article 1, § 32 of the Constitution of the State of Wyoming; § 1–26–401, W.S.1977, and previous similar enactments. At one time the Wyoming statute permitted the taking of a fee interest for such a way of necessity. Section 49–46, W.C.S.1920, discussed in *Meyer v. Colorado Central Coal Company*, 39 Wyo. 355, 271 P. 212 (1928), reh. denied 274 P. 1074 (1929). The statute in vogue at the time of the condemnation by WYMO provided that " * * * the way of necessity appropriated is for a surface easement for right-of-way only * * *. [C]ompensation shall not be awarded for * * * the * * * mineral estate, but only for the actual rights and property claimed and appropriated." Section 1–26–401(f), W.S.1977, S.L. of Wyoming 1907, ch. 52, § 1, as amended.

We have said that the owner of the surface estate and the owner of an easement each possess rights. *Wallis v. Luman*, Wyo., 625 P.2d 759 (1981); *Bard Ranch Company v. Weber*, Wyo., 557 P.2d 722 (1976). See also *Lingle Water Users' Association v. Occidental Building & Loan Association*, 43 Wyo. 41, 297 P. 385 (1931). We have, however, accepted the proposition that the rights of the owner of the easement are paramount to the extent of the easement and include all rights incident or necessary to its proper enjoyment. The owner of the servient estate retains only such incidents of ownership as are not inconsistent with the easement. *Bard Ranch Company v. Weber*, supra. This case might well be decided by simply pointing out that the rights afforded by the provisions previously quoted from the Environmental Quality Act are inconsistent with the proper enjoyment of the easement obtained by condemnation and, therefore, were not retained by the Mills and the Edwards.

We also note the rule which we have espoused that statutes relating to the same subject should be harmonized where possible. *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979). The condemnation statute (§ 1–26–401, W.S.1977, now § 1–26–815, W.S.1977 (1986 Cum.Supp.)) and § 35–11–406, W.S. 1977, a part of the Wyoming Environmental Quality Act, both relate to the respective rights of WYMO, the owner of the easement, and the Mills and the Edwards, the landowners. The provisions of § 35–11–406(b)(xi) and (xii), W.S.1977, apparently extend a surface owner the right to prevent unreasonable use of the surface by a mineral owner so that the surface owner is afforded an opportunity to protect his interests in advance of any development by the mineral owner. On the other hand, the condemnation statute represents a policy of assuring access for the development of mineral lands. We harmonize these two statutes in the context of this case by our holding that the Mills and the Edwards are not surface owners after the condemnation judgment. The ruling of the district court afforded paramount efficacy to the Wyoming Environmental Quality Act, and in net effect permitted the owners of the servient estates to foreclose the use of the WYMO easement, perhaps even more effectively than if they had erected bars across the easement. Our holding affords efficacy to the condemnation statute, and at the same time permits the invocation of the Wyoming Environmental Quality Act when appropriate to protect the interests of a resident or agricultural landowner or surface owner.

In this instance the Mills and the Edwards were left with no interest which required protection pursuant to the Wyoming Environmental Quality Act. We call attention to *Energy Transportation Systems, Inc. v. Mackey*, Wyo., 650 P.2d 1152 (1982), and *Coronado Oil Company v. Grieves*, Wyo., 603 P.2d 406 (1979). In

both cases this court assumed the propriety of the eminent domain statutes and the authority conferred by them to appropriate private property for public use without consent. In *Snell v. Ruppert,* Wyo., 541 P.2d 1042 (1975), we held that the whole concept of eminent domain is the taking of private property without the owner's consent. Such taking, however, requires that just compensation be paid to the landowner. That compensation is the difference in value of the entire parcel of land before the taking and after the taking. Conceptually that amount would be the same amount as required to compensate the owner of the surface estate for damages caused by unreasonable use of the surface in the development of the mineral estate. In theory then, the Mills and the Edwards have been compensated for whatever damage the construction of the railroad spur track and the mine truck haul road would inflict upon their lands. They could recover no more for damages after use by the owner of a mineral estate which caused damage beyond that reasonably necessary for development. The net effect is that the Mills and the Edwards had no interest left which required the protection of the Wyoming Environmental Quality Act, and, therefore, they should not be afforded the rights of surface owners under that statute.

■ This was the approach taken by the Department of Environmental Quality and the Environmental Quality Council. The construction of a statute by an agency charged with its execution is entitled to consideration in a case in which the application and construction is an issue for the courts. *Demos v. Board of County Commissioners of Natrona County,* Wyo., 571 P.2d 980 (1977). In this instance the Wyoming Environmental Quality Council correctly construed the statute, and its order granting the mining permit should be upheld. The order of the district court which reversed the order of the Environmental Quality Council upholding the issuance of a coal mining permit to WYMO and which remanded the case to the Council for further hearings is reversed. The order of the Environmental Quality Council is reinstated.

Our holding with respect to the issue of whether the Mills and the Edwards still possess the right of resident or agricultural or surface owners to insist upon their consent to the permit disposes of the burden of proof issue argued by the parties. It is moot. The parties also expressed concern about whether the condemnation judgment entered by the United States District Court would afford authority to construct electric utility lines within the easement. The order specifically encompasses "appurtenances," and were we specifically charged with construction of the federal judgment we would conclude that the easement possessed by WYMO would encompass that use. Nothing would be accomplished by any insistence that the utility company bring a separate eminent domain proceeding to condemn the right to use the easement for utility lines.

The judgment of the district court is reversed and the order of the Environmental Quality Council is reinstated.