**CORONADO OIL COMPANY,**
Appellant (Plaintiff),

v.

**John A. GRIEVES, Joann Grieves, Madeline Grieves, Thomas B. Grieves, Marie Grieves, Ruth K. Graham, Neal Reisland, Hazel Reisland and The Federal Land Bank of Omaha, Appellees (Defendants).**

No. 5104.

Supreme Court of Wyoming.

Dec. 3, 1979.

J. John Sampson, Newcastle, and Joseph M. Montano and Shayne M. Madsen, Denver, Colo., signed the brief and Montano appeared in oral argument on behalf of appellant.

Stanley K. Hathaway, Brent R. Kunz and Richard Barrett, Cheyenne, signed the brief on behalf of amicus curiae for Maurice W. Brown.

David O. Cordell, D. Thomas Kidd, R. Stanley Lowe, Casper, and Frank H. Houck, Denver, signed the brief on behalf of amicus curiae for Rocky Mountain Oil and Gas Association, in support of appellant.

Chester S. Jones, Newcastle, signed the brief on behalf of appellees John A. Grieves, Joann Grieves, Madeline Grieves, Thomas B. Grieves, and Marie Grieves.

Gordon W. Schukei, Newcastle, signed the brief on behalf of appellees Ruth K. Graham, Neal Reisland, and Hazel Reisland.

Oral argument was presented by Chester S. Jones, Newcastle, on behalf of all appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The central issue in this appeal is whether plaintiff-appellant, an oil company—a private corporation—pursuant to § 32, Art. I of the Wyoming Constitution[1] and § 1–26–401, et seq., W.S.1977[2] has a right to condemn private property of defendants-appellees in order to obtain a way of necessity required to provide access for purposes of exploration and development of federal oil and gas leases held by the oil company. The district court granted a summary judgment generally in favor of the appellees and dismissed appellant's action to condemn a way of necessity.

We will reverse.

The issues posed by appellant are that the district court erred in granting summary judgment for appellees and, contrary to the holdings of the trial judge, it claims that:

1. Section 32, Art. I, Wyoming Constitution, is broad enough to cover the activity

---

1. Section 32, Art. I, Wyoming Constitution:
   "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

2. Section 1–26–401, W.S.1977, in pertinent part:
   "(a) Any * * * corporation authorized to do business in this state may appropriate by condemnation a way of necessity over, across or on so much of the lands or real property of others as necessary for the location, construction, maintenance and use of * * * tramways or mine truck haul roads required in the course of their business for agricultural, *mining*, milling, electric power transmission and distribution, domestic, municipal or sanitary purposes, or for the transportation of coal from any coal mine or railroad line. Persons under this subsection may enter upon any lands to examine and make surveys for planning or changing any use authorized under this subsection.
   "(b) The right of condemnation may be exercised for the purpose of:
   "(i) Acquiring new ways of necessity;
   "(ii) Enlarging or relocating existing ways of necessity;
   "(iii) Acquiring material for the construction, repair or maintenance of any structures or facilities for which the way of necessity is or may be acquired;
   "(iv) Acquiring easements or rights-of-way over adjacent lands sufficient to enable the owner of the way of necessity to construct, repair, maintain and use the structures or facilities for which the way of necessity is acquired.

"(c) A way of necessity acquired hereunder shall not exceed one hundred (100) feet in width on each side of the outer sides or marginal lines of the reservoir, drain, ditch, underground water pipeline, canal, flume, power transmission line, railroad trackage, siding or tramway unless a greater width is necessary for excavation, embankment or deposit of waste from excavation. In no case may the area appropriated exceed that actually necessary for the purpose or use for which a way of necessity is authorized.
"(d) A way of necessity for a mine truck haul road shall not be granted except where no other reasonable and practicable way is available. The petitioner for a mine truck haul road way of necessity shall show that his petition is made in good faith, that no other reasonable and practical way is available and that the mining operation is economically feasible. The way of necessity may not exceed in area that which is actually necessary for the haul road, and in no case shall it exceed one hundred (100) feet in total width.
"(e) No appropriation of private property shall be made for the uses herein specified until just compensation is paid to the owner or owners of the property taken, as provided by law.
"(f) Except for underground water pipelines, the way of necessity appropriated is for a surface easement or right-of-way only, and shall not include any claim, interest or property in or to the underlying minerals or mineral estate. Damages or compensation shall not be awarded for or on account of the underlying minerals or mineral estate, but only for the actual rights and property claimed and appropriated."

of Coronado Oil, is self-executing, and appellant is entitled to condemn a way of necessity whether or not such right is included in the statutory provision at issue in this case.

2. Appellant is entitled to condemn a way of necessity under § 1–26–401, et seq., supra, because it is engaged in "mining" within the contemplation of the statutes.

3. Appellant is entitled to condemn a way of necessity under § 1–26–301, et seq., W.S.1977, because it is a petroleum company within the contemplation of that statute.

4. Appellant did not fail to exhaust its remedies by failing to appeal a decision of the Weston County Commissioners which denied it a right-of-way of necessity after a proceeding held pursuant to § 24–9–101, et seq., W.S.1977.

5. The description of property sought to be condemned as set out in the complaint was sufficient under Rule 71.1, W.R.C.P.

The factual and procedural background of the case is essentially this. The appellant is the lessee under six federal oil and gas leases of land in Weston County, Wyoming. Appellant filed a complaint for condemnation of a way of necessity, alleging it had no access to the leased lands and sought to extend existing roads across lands owned by the appellees in order to explore for, develop and produce oil, and that it intended to haul by truck the oil produced. The complaint is complete and conforms in all respects to the requirements of § 1–26–401, et seq., supra, and Rule 71.1, W.R.C.P. The complaint also states that " * * * the Weston County Commissioners denied [Appellant's] petition for a private road pursuant to Wyoming Statues [sic], 1977 Republished Edition § 24–9–101 et seq." Before hearing on January 4, 1979, appellant amended its complaint to allege a right to condemn private property under § 1–26–303, W.S.1977.[3]

At the outset of the hearing the district court granted appellees' motion to dismiss appellant's claim to condemn under § 1–26–401, et seq., supra, because appellant's activity was not mining within the contemplation of the statutes. Later in the hearing, testimony was heard by the court from William Mitchell, president of appellant's corporation, and three exhibits were introduced into evidence. At the conclusion of Mitchell's testimony, the district court granted appellees' motion for summary judgment on the grounds:

" * * * that the statute, 1–26–303, does not provide authority for the court to act under the facts presented. The court construes the legislature to intend petroleum pipeline companies and other pipeline companies have the right of eminent domain and oil companies or any company or associations of persons that wish to go upon the lands of another to explore and drill for petroleum does not have statutory authority to secure right-of-ways by eminent domain.

"The court is also granting the summary judgment for the reason that the plaintiff has not exhausted its remedies. It is alleged and agreed that the county commissioners of this county were petitioned for a right-of-way; that was denied. It appears to the court that this matter was not appealed as provided by statute. Thus, the remedies were not exhausted.

"Further, the description contained in the complaint for condemnation is insufficient and does not meet the requirement of Rule 71.1 of the Wyoming Rules of Civil Procedure."

There was then much discussion concerning the scope of the summary judgment and whether it should also cover the applicability of § 1–26–401, et seq., supra. The trial judge stated:

---

**3.** Section 1–26–303, W.S.1977, in pertinent part:

"Whenever * * * any petroleum or other pipeline company * * * shall not have acquired by gift or purchase, any land * *

required for the construction or maintenance of their * * * pipe, * * * the said corporation shall have the right of eminent domain and may condemn the land * *."

"Well, the court will reconsider its ruling on the first motions made by defendants in regard to 1–26–401 through 404. During its reconsideration will grant the motion to consider Exhibits No. 1 through No. 3 as submitted together with the testimony of Mr. Mitchell. The court's ruling will remain the same on that motion. And the court will grant the summary judgment as stated."

The written judgment recites:

"IT IS HEREBY ORDERED that defendants' motion for summary judgment against plaintiff be, and it hereby is, granted, and that summary judgment be entered in favor of defendants and against plaintiff, and that plaintiff's Amended Complaint be dismissed."

We, therefore, conclude the net effect of all this to be that summary judgment was granted in favor of appellees as to all issues raised by appellant; and we will consider them in that light.[4]

The propriety of granting a motion for summary judgment depends upon the correctness of the court's dual finding that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation*, Wyo.1979, 590 P.2d 1306, 1309; *Johnson v. Soulis*, Wyo.1975, 542 P.2d 867. In this case we have no apparent factual dispute. The conflict between the parties here relates only to the application of a constitutional provision, pertinent statutes, and Rule 71.1, W.R.C.P., all pertaining to eminent domain. There is only a question of law.

■ Eminent domain is the right and power of the State to appropriate private property to a particular user for the purpose of promoting the general welfare. It embraces all cases where, by authority of the State and for the public good, the property of an individual is taken, without his consent, for the purpose of being devoted to some particular use, either by the State itself or by a corporation, public or private, or by a private citizen. Section 32, Art. I, Wyoming Constitution is a recognition of the proposition that the uses there outlined while serving a private purpose indirectly benefit the general public. A private use is by constitutional edict given the force and effect of a public use. *Grover Irrigation & Land Co. v. Lovella Ditch, Reservoir & Irrigation Co.*, 1913, 21 Wyo. 204, 131 P. 43, L.R.A.1916C, 1275, Ann.Cas.1915D, 1207.

Constitutional authorization for ways of necessity is not unique to the State of Wyoming. See 2A Nichols on Eminent Domain, 3rd Ed., §§ 7.626 and 7.626[1] with 1979 Supplement, for a background discussion. The right to condemn a way of necessity under constitutional and statutory provisions is an expression of public policy against landlocking property and rendering it useless. *Franks v. Tyler*, Okl.App.1974, 531 P.2d 1067. The obvious purpose of the constitutional and statutory provisions is to provide a means whereby a landowner or owner of an interest in lands, enclosed on all sides by lands of others and unable to get to the land from a public road or highway can get relief by condemning a right of way to it across intervening land. *McGowin Investment Co. v. Johnstone*, 1974, 54 Ala.App. 194, 306 So.2d 286, cert. den. 293 Ala. 766, 306 So.2d 290.

■ We hold that § 1–26–401, et seq., are the statutes which govern eminent domain proceedings in this case. As a general rule, statutes conferring the power of eminent domain are to be strictly construed in favor of landowners, so that no person will be deprived of the use and enjoyment of his property except by a valid exercise of the power. 29A C.J.S. Eminent Domain § 22, pp. 219–220; West's Digest System, Eminent Domain, ⊂⇒8. However, this doctrine does not preclude the reasonable and sound

---

4. At the very tail end of the hearing, appellant was allowed to amend its complaint to include § 32, Art. I, Wyoming Constitution. The pertinence of the constitutional provision was discussed in memorandum briefs submitted to the court by both parties and in oral argument to the court, and it appears that the intent of the district court was to include it as an issue by the summary judgment, although the record is somewhat fuzzy in that regard.

construction of such statutes in light of the objectives and purposes sought to be attained. *Concerned Citizens, United, Inc. v. Kansas Power and Light Co.*, 1974, 215 Kan. 218, 523 P.2d 755; 29A C.J.S. Eminent Domain § 22, pp. 220–221. We are not unaware of the great public interest in an imminent need for energy. While at the time of adoption of the constitution the concern was one of developing the economy and settlement of the state, the urgency has now become one of survival.

We think it plain beyond any doubt that the intended purpose of the cited constitutional provision and statutes was to facilitate the development of our state's resources. We will hereafter construe the word "mining" to include the exploration for oil and gas, and that now is hardly unique or expansive of that term and is nothing more than a reasonable and sound construction which carries out the intent of the constitution and related statutes, as well as permitting development of the resources of this state for the common good.[5] It is only reasonable that the owner of valuable resources should not be shut in and deprived of the opportunity to exploit them for what is in a significant part a compelling public purpose. The argument put forward by appellees, and which was adopted by the district court, would have us construe the term "mining" and the phrase "mine truck haul road" so strictly, narrowly, and technically as to defeat and ignore the evidence purpose of § 32, Art. I, Wyoming Constitution and applicable statutes implementing that granted power.

■ Because of our disposition, it is unnecessary for us to decide whether § 32, Art. I of the Wyoming Constitution is self-executing for purposes of this case. The legislature has carried forward that constitutional provision insofar as the relief sought by the appellant is concerned. The right to proceed in eminent domain as was done in this case has its roots in the constitutional provision and is recognized by statute. The legislature has defined ways of necessity as including access by road to and from mining activities. This, the legislature has a right to do. *Meyer v. Colorado Cent. Coal Co.*, 1928, 39 Wyo. 355, 271 P. 212, reh. den. 1929, 274 P. 1074. Though the legislature's interpretation of the constitution is not binding on the supreme court, we would be loath to interpret the constitution otherwise. *Laverents v. City of Cheyenne*, 1950, 67 Wyo. 187, 217 P.2d 877. We give much weight to legislative interpretation, though not conclusive. *State ex rel. Irvine v. Brooks*, 1906, 14 Wyo. 393, 84 P. 488, 6 L.R.A., N.S. 750, 7 Ann.Cas. 1108. Acting upon that foundational authority, the legislature has in addition provided for a procedure to carry out its objects and purposes. Section 1–26–405, W.S. 1977 sets out the mechanics:

"Any action or proceeding to acquire title to or any interest in the real or personal property of another by condemnation, for any purpose whatsoever, shall be commenced and conducted in accordance with Wyoming Rules of Civil Procedure."

Rule 71.1, W.R.C.P., therefore governs the procedure to be taken in the exercise of the power of eminent domain.

■ Both § 32, Art. I, and § 1–26–401 use the words *way of necessity* without any conditional or restrictive language. The constitution, of course, was adopted in 1890 and § 1–26–401 was originally enacted in 1907. At that time oil was considered generally to be a mineral and an oil well to be a mine. This categorization, while not absolutely accurate in a scientific sense, was widely accepted and persists to this day. As early as 1895, this court recognized that the exploration of oil was a placer mining claim. *Van Horn v. State*, 1895, 5 Wyo. 501, 40 P. 964. This same recognition is reflected in *Douglas Oil Fields v. Hamilton*, 1908, 17 Wyo. 54, 95 P. 849; and *Dean v. Omaha-Wyoming Oil Company*, 1913, 21 Wyo. 133, 128 P. 881; *Skeen v. Lynch*, 10th Cir. 1931, 48 F.2d 1044, cert. den. 1932, 284

5. See also, *Snell v. Ruppert*, Wyo.1975, 541 P.2d 1042, 1046 (fn. 5); 29A C.J.S. Eminent Domain § 56, p. 292.

U.S. 633, 52 S.Ct. 17, 76 L.Ed. 539; *Amoco Production Co. v. Guild Trust,* D.Wyo.1978, 461 F.Supp. 279, 282. We hold that the exploration for oil and gas is "mining" within the meaning of the statutes here in question. See also, *Southland Royalty Co. v. Pan American Petroleum Corp.,* Tex. 1964, 378 S.W.2d 50, 56; *Gueno v. Medlenka,* 1960, 238 La. 1081, 117 So.2d 817, 820; 27 Words and Phrases, "Mining," pp. 343–344 (1961); 1A Summers, Oil and Gas, § 135, n.30; 58 C.J.S. Mines and Minerals §§ 2 and 3. And that would by a reasonable construction include a "mine truck haul road" as a way of necessity in that it is necessary to haul out the mined petroleum product, as well as to haul in the necessary oil well drilling equipment and supplies. The words speak for themselves.

Although our disposition makes it unnecessary as well to give plenary treatment to the scope of § 1–26–303, supra, the record does show that appellant is authorized by its corporate charter to construct pipelines. However, nowhere in the pleadings or evidence presented below does appellant allege that it intended to condemn for such a purpose and at this stage of the proceedings there is no issue to be decided under § 1–26–303. This is not to suggest that at an appropriate time and in the light of future facts appellant would not qualify to pursue such a condemnation action if production justifies the necessity to construct a pipeline.

Appellees assert, and the district court held, that appellant was precluded from bringing this action because they sought to establish a private road pursuant to § 24–9–101, et seq., W.S.1977.[6] This issue is raised in a somewhat unusual and unsatisfactory manner. Appellant asserted in its complaint that it had gone to the county com-

missioners to obtain a private road and had been turned down.[7] No issue with regard to this question was raised in the district court by appellees. Rather the district court seems to have raised it and decided it sua sponte. The district court decided that appellant was precluded from pursuing this action because appellant "has not exhausted its remedies" when the county commissioners denied relief under § 24–9–101. Neither of the parties contests that such a proceeding took place and under the circumstances of this case we think it provident to point out several matters apparently not taken into account by the district court.

The trial judge apparently misconceived and misapplied the exhaustion doctrine. The exhaustion doctrine is concerned with timing of judicial review of administrative action. 3 Davis, Administrative Law Treatise, 1958, § 20.01, p. 57. In the case before us, the action taken in the district court was not to question or review the administrative proceeding before the county commissioners. That proceeding was abandoned and a new proceeding taken under completely separate and unrelated statutes. The question became one of election of remedies and we will decide the issue on that basis.

We are not certain what remedies the district court determined that appellant had failed to exhaust. However, we think it clear and hold that while appellant might pursue some remedy under § 24–9–101, supra, and, without seeking redress by way of appeal from an unfavorable determination of that action, it is not precluded from pursuing a remedy under § 1–26–401, et seq., supra. Where consistent cumulative remedies are provided by statute, there is no requirement that a claimant elect or pursue them in any particular order or

6. Section 24–9–101, W.S.1977, in pertinent part:

"Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road. * * * *"

Then follows the procedure to be taken before the board of county commissioners. Provision for appeal to the district court is also made.

7. This was coupled with the allegation that appellant was also unable to negotiate a satisfactory arrangement with appellees. The obvious purpose of these allegations is to make plain that appellant was in good faith seeking a remedy from the court.

manner. *Vissenberg v. Bresnahen*, 1949, 65 Wyo. 367, 202 P.2d 663, 665–666; 28 C.J.S. Election of Remedies, §§ 1–4. We found no statutory declaration that any particular remedy is exclusive, as far as condemnation is concerned. There is also a question here of whether appellant's seeking of a remedy under § 24–9–101 was anything more than the fruitless pursuit of a remedy that was not available to it, and thus would be no bar to a subsequent action under § 1–26–401, et seq. Since appellant's real relief should have been sought under § 1–26–401 because it really was after a mine haul road, the first proceeding may not have been proper because of the availability of a special statute. Where there is really but one remedy and not a choice, recourse to one remedy which proves futile does not preclude thereafter successfully invoking a second more appropriate remedy. *Roberts v. Roberts*, 1945, 62 Wyo. 77, 162 P.2d 117, 122. However, it is unnecessary for us to decide this latter question since it is clear under *Vissenberg* that appellant would not be barred from an action under § 1–26–401 no matter what characterization is given to the final disposition of its earlier application under § 24–9–101. The district court erred in ruling that appellant had failed to exhaust remedies supposedly available under the earlier suit, and thus granting summary judgment in favor of appellees.

■ The district court also based its grant of summary judgment in favor of appellees on the basis that the description of the property taken was insufficient under Rule 71.1(c)(2), W.R.C.P., which requires that the complaint contain a description of the property sufficient for its identification. It is obvious from the record that the description given was fairly general and in some respects, perhaps, incorrect. Nonetheless, the record is abundantly clear that the purpose of the proceeding was for appellant to obtain a way of necessity across the described lands. The statutes which govern the power of eminent domain which appellant has a right to pursue make it clear that such a way of necessity is restricted to that which is necessary and allowed by the statute. Here appellant wants what is described as a winding road and appellant was forthright in stating it was impossible to describe it more precisely than the description which was given in the complaint. As we understood at oral argument, the appellant has never been permitted on the lands in order to make a survey and be more precise in describing a road to its leases. Moreover, the exhibits, particularly Exhibit 3, show a proposed path of the way of necessity.[8] That which can be made certain, is certain. The district court erred

8. 6A Nichols, Eminent Domain, 1976, § 27.23, pp. 27–37 to 27–39, explains a comparable phrase appearing in Rule 71A, F.R.C.P.:

"*(f) Description.*—Rule 71A of the Federal Rules of Civil Procedure requires that the complaint set forth a description of the property sought to be acquired 'sufficient for its identification.' A sufficient description of what the condemnor proposes to acquire is essential for several reasons. It serves first to inform the owner as to the extent and location of the property to be taken. It also enables the jury or commissioners to assess the damages intelligently. The description in the complaint should be such that no difficulty will arise in framing the judgment by reference to such description without repeating it.

"The word 'description' has been defined as a portraiture or representation in language. The complaint must, therefore, give a representation of the property in language. On the theory that the proceedings operate as a deed to transfer title, some authorities hold that the land should be described with as much certainty as would be necessary in a conveyance. Others hold sufficient a description from which a surveyor or someone familiar with the locality might locate the tract. Usually, however, general allegations are held sufficient. The word 'about' does not materially impair the certainty of the description. Designation of the property by 'square number' if the property sought to be acquired constitutes all the privately owned land within the given square, is sufficient. Descriptions by metes and bounds or by subdivisions of the government survey sections should be deemed sufficient. In descriptions by metes and bounds, definite and certain termini are necessary, unless the tract is platted land. It has been held that reference to a line of stakes liable at any moment to be removed, without reference to a fixed monument for a beginning, is not sufficient.

"Although it has been said that the description must be definite enough so that the land can be ascertained without extrinsic evidence, it will usually be considered sufficient,

in granting summary judgment on this ground. The description given in the complaint satisfies the purpose of Rule 71.1, supra, to give general notice to all who will be concerned what lands are contemplated by the condemnation. 12 Wright and Miller, Federal Practice and Procedure, Civil § 3044, p. 101; 7 Moore's Federal Practice, ¶ 71A.40[4], p. 359. It is obvious that any deficiencies in the land description will be remedied in the course of further proceedings. Once the right of entry is granted pursuant to § 1–26–401, " * * * [p]ersons under this subsection may enter upon any lands to examine and make surveys for planning or changing any use authorized under this subsection." The complaint is sufficient to give notice to appellee of what lands are the subject of this condemnation proceeding.

There may be other issues developed during the course of further proceedings following remand. We view the record as indicating that nothing the plaintiff could do would have satisfied the trial judge that the plaintiff had authority to proceed in condemnation. A correct description or other matters suggested by the dissenting and concurring opinions were really not matters necessary for determination by the trial court once it took the adamant position that the plaintiff had no standing to undertake acquisition of lands under eminent domain. While the majority neither approves nor disapproves of the partially concurring and partially dissenting opinions because much of their discussion is premature, they may have a salutary effect upon the district court and counsel.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

McCLINTOCK, Justice, partially concurring and partially dissenting.

I agree with the majority of this court that summary judgment in favor of the defendants was improperly entered. I do not doubt that the central issue *sought* to be presented by the plaintiff and adversely adjudicated by the district court's judgment is whether plaintiff had a right of condemnation under the constitution and laws of Wyoming. However, to vary slightly the metaphor suggested by Mr. Justice Rooney, I would say that plaintiff never got its train on the track. His analysis of the facts and authorities is to me completely satisfactory and I shall not elaborate thereon except to add that it is difficult for me to conceive how a general description of legal subdivisions totaling 1,680 acres of land, only a part of which could be included in the roadway, can be considered a description of the property to be taken sufficient for its identification. The maxim that that is certain which can be made certain is in my view completely inoperative in such a situation. There is nothing in the description in the complaint which even the most competent surveyor could use to come up with an accurate description of the proposed right of way. The statutes require that the requested right of way be described, not the legal subdivisions that it will traverse. Also, I think it an essential element, to be alleged and established at the outset of the proceedings, why the right of way is needed by the condemnor. Even assuming that general allegations of necessity may be filled in by proof of facts showing need, the omissions in the complaint were never corrected by the proof. We cannot then pro-

---

although some investigation outside the description itself is necessary. Thus, if the allegations in the complaint together with a map make an intelligible description, it is sufficient. The map need not be physically attached, for it may be included by reference to a recorded map open to the defendant's inspection. But whether the map or plan is physically attached to the petition or not, the description must incorporate it by reference or the court will not take notice of it. The complaint may also be aided by reference to an authorizing statute which contains a further description of the land.

"If the description can be made certain by rejecting that which is repugnant or false, this will be done so as to effectuate the intention of the instrument as a whole, and at times the subordinate features or circumstances of the description will be rejected as surplusage in order to allow the complete and correct parts to stand alone." (Footnotes omitted.)

ceed on the basis that the complaint may be considered as amended. I therefore agree with Mr. Justice Rooney that the complaint was insufficient in so many ways that the district court was without power to proceed, either in the ordinary way to establish the necessity of the taking and then assess damages for the land taken, or to enter declarations concerning the existence of the claimed right.

If Mr. Justice Rooney and I are right that the complaint should have been dismissed, the question arises as to why we do not advocate affirmance of the dismissal of the complaint. To me the answer lies in the fact that the judgment speaks to the merits of the case, a point I think should never have been reached. Thus, the judgment recites:

"On due consideration of the records and files in this matter, the original and amended pleadings, the testimony of plaintiff's witness and the exhibits introduced by plaintiff, and the oral argument of counsel for the respective parties, and being fully advised in the premises, *the court finds generally for the defendants and against the plaintiff on all issues.*" (Emphasis added.)

It is then ordered that defendants' motion for summary judgment against plaintiff be granted and the complaint dismissed.

This is a judgment upon the merits of the case. It is an adjudication that no method exists by which under the constitution and laws of Wyoming one who seeks to explore for oil and gas and needs access to his leased lands across the lands of another may secure such right. It would stand as res judicata as to the rights of this plaintiff and these particular defendants and prevent the filing and prosecution of a proper action to determine that right, either by ordinary condemnation proceedings or by declaratory judgment. It might also have some standing as precedent as the only judicial interpretation of our constitution and statutes. Such a judgment is not proper at this stage of the proceedings.

This court does not seem to have specifically considered the difference between summary judgment and dismissal, whether for lack of jurisdiction or failure to state a claim, but the distinction is clearly explained in 10 Wright & Miller, Federal Practice and Procedure, § 2712, p. 386, et seq.:

". . . A summary judgment motion goes to the merits of the case and, because it does not simply raise a matter in abatement, a granted motion operates to merge or bar the cause of action for purposes of res judicata. A litigant cannot amend as a matter of right under Rule 15(a) after a summary judgment has been rendered against him and a court ordinarily will be reluctant to allow leave to amend to a party against whom summary judgment has been entered, especially in the absence of a showing that the defect that gave rise to the grant of the motion will not affect the new pleading."

The authors consider summary judgment an inappropriate vehicle to attack a court's jurisdiction and comment that generally the courts hold that it is improper for a district court to enter a judgment under Rule 56 for defendant because of lack of jurisdiction. They then comment:

"The rationale for this conclusion, although somewhat metaphysical, is sound. If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action. In addition, a dismissal for want of jurisdiction has no res judicata effect and the same action subsequently may be brought in a court of competent jurisdiction. A summary judgment, on the other hand, is on the merits and purports to have a res judicata effect on any later action. The court's role on the two motions also is different. On a motion attacking the court's jurisdiction, the district judge may resolve disputed jurisdictional fact issues. On a motion under Rule 56 he simply determines whether any issues of material fact exist that require trial. * * * Furthermore, it should be remembered that under Rule 12(h)(3) the court may consider a question of subject matter juris-

diction at any time and even raise it on its own motion. Accordingly, the label attached to the motion should not prevent the court from deciding a summary judgment motion challenging the court's subject matter jurisdiction as a suggestion that the court dismiss the action on that ground." Id., § 2713, p. 404, et seq.

It is of course true that the main thrust of the plaintiff's case was to secure an adjudication as to its right to condemn a right of way across lands adjacent to its lease. It is possible that no specific location for the proposed well has been settled upon so that a complete description and a complete exposition of the necessity for the right of way was considered unnecessary. The question whether Wyoming's eminent domain statutes are applicable to oil and gas operations is not new, although to my knowledge this is the first case to reach the courts. The disposition of the case made by this court today may well settle the question and result in negotiation of the parties, effecting a settlement of the dispute. It may also prevent such disputes in the future. This empirical goal may induce the majority's willingness to proceed upon a very doubtful record. It is tempting to me, but I think that what results is an advisory opinion, without proper factual basis. Unless and until plaintiff can present to the proper court a complaint that complies with the requirements of the statute, I agree with my Brother Rooney that we should not subject landowners to the cost and vexation of eminent domain proceedings.

I would reverse the summary judgment and remand the case with directions to dismiss the complaint but with permission to the plaintiff to file an amended complaint in compliance with the law. If alternative remedies are sought under different statutes, then the complaint should contain the allegations pertinent and basic to either theory to be presented by the plaintiff.

ROONEY, Justice, partially concurring and partially dissenting.

I concur only with the majority order remanding this case to the district court. I dissent from the action taken by the majority of the court in addressing the issue of whether or not appellant had authority to take appellees' private property on the record before us. The issue was not properly placed before us, and it is too important to be considered in an uninformed fashion. The case should have been returned to make necessary findings of fact, to establish proper jurisdiction and to enter a proper order. We have returned other cases to the trial courts for such purposes. Often the issue itself is resolved when such is done. Other times, additional issues accompany it on appeal so that the case can be disposed of in one appeal, rather than in a piecemeal fashion.

In this instance, the trial court proceeding was so confusing and inadequate as to indicate the need for guidance in connection with this matter. As indicated later herein, the failure to include an adequate description in the complaint was jurisdictional. Before the trial court—or our court—should consider substantive matters, there should be jurisdiction. Also as indicated later, the "judgment" appealed from is difficult to identify or define. If it is a "summary judgment," it should be given only if there is no genuine issue of a material fact. The facts set out in § 1-26-401(d), W.S.1977, which are a prerequisite for the authority to take under that section (the one in which the majority found such authority), were definitely in issue and were argued to the court. If the "judgment" appealed from is a dismissal, it recites only that it is a dismissal of the complaint. The cause not being dismissed and the dismissal not being "with prejudice," it was not an appealable order. Rule 71.1(k)(4), W.R.C.P.; *Mark v. Groff,* 9th Cir. 1975, 521 F.2d 1376; *Budde v. Ling-Temco-Vought, Inc.,* 10th Cir. 1975, 511 F.2d 1033.

Speaking metaphorically, the failure to follow the procedures set forth by this court in Rule 71.1, W.R.C.P. for eminent domain actions has resulted in a derailment of the process which can be rectified only by putting it back on the track at the point of derailment so that it can continue to its

proper destination, and an effort to uproot the destination itself and move it back to the point of derailment in an effort to correct the situation is not only unproductive, but is encouragement for future derailments with accompanying injuries. We are remiss in accepting and acting on issues which are not properly formed and presented to us pursuant to our own rules. Here, the majority of the court is doing more than rendering an advisory opinion on less than fully developed facts, it is establishing a precedent which can only result in a mishmash for future eminent domain proceedings.

Before addressing and detailing the failure to here follow the protective and orderly procedure established for eminent domain actions, I make two general observations:

First, although the taking of one's private property for public use, and even for private use where beneficial to the public, is constitutionally recognized as proper and necessary, Art. I, § 32, Wyoming Constitution, we cannot overlook the importance of private ownership of property in the maintenance of the capitalistic system under which this country operates. Indeed, such ownership is one of the fundamental differences between our democracy and communism. Although federal and eastern corporate ownership, as distinguished from local and family unit ownership, of Wyoming real property may have already "steamrolled" to a point wherein it is inevitable, and although full-scale development and utilization of the minerals and other natural resources of our state may be desirable and necessary, these ends should be attained within the scope of law and with full recognition of property and constitutional rights of others.

Second, the procedure for an eminent domain action, as set forth in Rule 71.1 W.R.C.P.,[1] is essentially a two-phase procedure. Such two-phase procedure is historical and usual in eminent domain actions.[2] The first phase is a determination of the regularity of the proceedings. It is a determination of: (1) the power or authority or right to make the appropriation; (2) the proper purpose or use for which the appropriation is made; (3) the availability or subjectivity of the property for the appropriation; (4) the quantum and interest or the estate to be acquired by the appropriation; (5) the necessity for the appropriation;[3] and (6) the identification or location of the property to be appropriated. The second phase is a determination of the amount to be paid for the appropriation, including the amount to be paid for the consequential damages resulting therefrom. See Rule 71.1, W.R.C.P.; 29A C.J.S. Eminent Domain §§ 267 et seq.; 27 Am.Jur.2d Eminent Domain,

1. Rule 71.1(e), W.R.C.P., provides for a hearing at which the judge shall:
    " * * * require evidence that notice of hearing has been given as provided in this rule, and shall hear and determine the questions of the plaintiff's right to make the appropriation, plaintiff's inability to agree with the owner, the necessity for the appropriation, and shall hear proofs and allegations of all parties interested touching the regularity of the proceeding. * * * "
    Rule 71.1(h) and (j) provide for ascertainment of proper compensation by court appointed appraisers or by a jury after trial.

2. Statutory proceedings with the two-phase procedure prior to Rule 71.1, W.R.C.P.: Section 1–767, W.S.1957, relative to taking by railroad companies; § 1–743, W.S.1957, relative to taking by the state, counties, and municipalities, and § 1–744, W.S.1957, relative to taking by school districts, both adopting the procedure for taking set forth in § 1–767, W.S.1957. Section 1–793, W.S.1957, relative to taking by road, ditch, telegraph, telephone, and petroleum or other pipeline companies. Section 37–64.7, W.S.1957, 1975 Cum.Supp., relative to taking by Wyoming Natural Gas Pipeline Authority and adopting the procedure for taking set forth in § 1–793, W.S.1957. Section 1–799, W.S.1957, relative to ways of necessity for reservoirs, drains, flumes, ditches, canals, electric power transmission lines, railroad trackage, sidings, spur tracks, tramways and mine truck haul roads. Section 24–6, W.S.1957, relative to highways.

3. The taking of a right-of-way pursuant to eminent domain authorization and proceedings should not be confused with an action to enforce a common-law way of necessity, which is sustained when a conveyance of a tract of land is made and access between it and the outside world is only by means of a way over the land retained by the grantor.

§§ 375 et seq. We are here concerned only with the first phase.

Turning then to the failure to create a proper record upon which we can act, the cause of which was occasioned by non-compliance with the directions of Rule 71.1, W.R.C.P., the errors are in two areas:

1. LACK OF SUFFICIENT DESCRIPTION IN COMPLAINT.

Rule 71.1(c)(2), W.R.C.P., provides in part:

"*. * * The complaint shall contain a short and plain statement of the authority for the taking, the use for which the property is to be taken, *a description of the property sufficient for its identification*, the interests to be acquired, and as to each separate piece of property, a designation of the defendants who have been joined as owners thereof of some interest therein, together with their residences, if known, and whether the plaintiff demands immediate possession or desires to continue in possession. * * *" (Emphasis supplied.)

In its complaint, appellant recites the ownership by appellees Grieves of the SW ¼, Sec. 17; S ½, Sec. 18; NE ¼, Sec. 19; and NW ¼, Sec. 20, T. 42 N., R. 64 W., 6th P.M. and S ½, Sec. 13 and N ½, Sec. 24, T. 42 N., R. 65 W., 6th P.M.; and by appellees Graham and Neal and Hazel Reisland of SE ¼, Sec. 14; NE ¼ NE ¼, Sec. 23, and NW ¼ NW ¼, Sec. 24, T. 42 N., R. 65 W., 6th P.M., all in Weston County. It then alleges:

"6— There are roads located on the property described in paragraphs four and five which are used by oil producers and connect with Weston County Road No. 5. These roads cross, touch or are in very close proximity to the leases and property described in paragraph two of this complaint. It is not possible to provide a description of the roads because of their winding character. Plaintiff will introduce exhibits to demonstrate the locations."

The complaint contains no further or other description of the property to be taken.

The last sentence in paragraph 6 of the complaint, supra, is a direct rejection of the requirement of Rule 71.1(c)(2) that a description of the property be set forth *in the complaint*. It would possibly be sufficient to attach a map-to-scale as an exhibit to the complaint, but to make the condemnees speculate as to whether the taking would be 100 square feet or 25,000,000 square feet until confronted with the specifics at the hearing is not sufficient. The purpose of the requirement is two fold. One, it allows preparation for a consideration by the court and by the condemnees of the issues of proper purpose, subjectivity of property, quantum and necessity for the appropriation; and second, it provides the condemnees with an opportunity to assess the damages to be occasioned by the taking so that an intelligent decision can be made concerning the necessity of filing an answer and so that potential witnesses can be obtained to assess the damages occasioned by the taking. *County of Orange v. Metropolitan Transportation Authority*, 71 Misc.2d 691, 337 N.Y.S.2d 178 (1971); *Monongahela Power Co. v. Shackelford*, 137 W.Va. 441, 73 S.E.2d 809 (1952); 27 Am. Jur.2d Eminent Domain, § 396; 6A Nichols on Eminent Domain, § 27.23 (1976). Unless the exact property to be taken and its location is known to such witnesses, they cannot begin their appraisal. Many times the condemnee settles out of court before the hearing when he receives the results of the appraisals made by his witnesses.

In this instance, the map introduced at the hearing, on its face, seems to indicate the existence of access without condemnation to all of appellant's leases except the one in the SW ¼ SE ¼, Sec. 13, T. 42 N., R. 65 W., 6th P.M. It would seem, therefore, that access to this one area is the only access necessary to be obtained by condemnation, and it could be obtained by condemnation of the Grieves' property without that of the other appellees, or vice versa. If the map had been made an exhibit to the complaint, appellees could have prepared their evidence relative to the *necessity* of the

taking along those lines. Without this information, they could not do so.[4]

" * * * Indeed, there is nothing more obviously essential to a petitioner's case than a sufficient description of that which it proposes to acquire. It cannot put on the defendant the burden of determining what or how much it requires to accomplish its purpose. * * * " 27 Am.Jur.2d Eminent Domain, § 396, p. 274 (1966).

The contention that the description in the complaint was as specific as possible because permission to enter for making of surveys, etc. was denied to appellant by appellees is not well founded or plausible inasmuch as a simple application to the court for an order granting authority to enter for such purposes undoubtedly would have resulted in such an order.[5]

The citations contained in the majority opinion, upon which it relies to conclude the adequacy of the description in this matter, actually contradict such conclusion. The references to 12 Wright & Miller, Federal Practice and Procedure: Civil § 3044, p. 101 (1973), and 7 Moore's Federal Practice, ¶ 71A.40[4], p. 359 (1979), are to restatements therein of the language of the rule itself, i. e., "a description of the property sufficient for its identification" is required in the complaint. Wright & Miller, supra, makes reference to Official Form 29 as illustrative of a complaint form in a condemnation action. · That form provides in part:

"5. The property so to be taken is (here set forth a description of the property sufficient for its identification) or (described in Exhibit A hereto attached and made a part hereof)." 12 Wright & Miller, supra, Appendix A, p. 331.

As previously indicated, the description in the complaint does not meet this criteria and is not "sufficient for * * * identification" of the property.

The quotation in the majority opinion from 6A Nichols on Eminent Domain, § 27.23, pp. 27-37 to 27-39·(1976) is again a contradiction of the determination made by the majority of the court in this respect. Language in it, such as the following, reflects the complete inadequacy of the description in the complaint:

" ' * * * The description in the complaint should be such that no difficulty will arise in framing the judgment by reference to such description without repeating it.' " (An obvious impossibility in this case.)

" ' * * * On the theory that the proceedings operate as a deed to transfer title, some authorities hold that the land should be described with as much certainty as would be necessary in a conveyance. Others hold sufficient a description from which a surveyor or someone familiar with the locality might locate the tract. * * * ' " (The description in the complaint is insufficient under either theory.)

" 'Although it has been said that the description must be definite enough so that the land can be ascertained without extrinsic evidence, it will usually be considered sufficient, although some investigation outside the description itself is necessary. Thus, if the allegations in the complaint together with a map make an intelligible description, it is sufficient. The map need not be physically attached, for it may be included by reference to a recorded map open to the defendant's inspection. But whether the map or plan is physically attached to the petition or not, *the description must incorporate it by reference* or the court will not take notice of it. * * * ' " (Emphasis supplied.) (The "outside investigation" must have a specific starting place, which is completely lacking in the complaint.)

---

4. As indicated, ante, the map was not sufficient in description in other respects, even if it had been annexed to the complaint.

5. Sections 1–26–401, et seq., W.S.1977 (the authority for the taking set forth in the complaint) and §§ 1–26–301, et seq., W.S.1977 (the

authority for the taking set forth in the amendment to the complaint) each provide for prior entry upon the lands to make "surveys for planning" and for "preliminary surveys and examinations."

The examples given in the quoted material from Nichols of sufficient "general allegations"; of designation by "square number" if all property within the square is included; metes and bounds with "definite and certain termini"; use of word "about" as non-impairment of certainty of description—none of these approach the generality of the description used in this complaint.

Additionally, it is said at § 26.112, pp. 26–48.1—26–56 of 6 Nichols on Eminent Domain, that:

> "The petition must contain an accurate description of the land sought to be taken, so that the extent of the claim will appear on the record. In the absence of an opportunity to amend the petition, *failure in this respect will invalidate the proceeding.* This description should be as accurate as is required in the case of a deed of land. At any rate it must be such that a surveyor could locate the parcel described without the aid of extrinsic evidence. * * *" (Emphasis supplied.)

and at § 26.1123, p. 26–65:

> "Inasmuch as a petition containing the allegations required by law is the foundation upon which rests the jurisdiction of the court to entertain condemnation proceedings, *insufficiency in the description of the land renders the entire proceeding void.* * * *" (Emphasis supplied.)

Of course, an amended complaint can be used to cure a description defect, Rule 71.-1(f), W.R.C.P., but the requirement of an adequate description in the complaint is a common-sense requirement and should be recognized as essential. The requirement for such is so basic to a condemnation proceeding as to be jurisdictional.

> "It is a jurisdictional requirement that the land sought to be taken be described in the petition with such accuracy, and certainty as will enable it to be identified. * * *" 29A C.J.S. Eminent Domain § 259, p. 1105 (1965).

"* * * Failure in this respect is a violation of substantive due process and will vitiate the proceedings. [Citations.]" *Housing Authority v. Atlantic City Exposition, Inc.*, 62 N.J. 322, 301 A.2d 441, 444 (1973). See *United States v. 5.324 Acres of Land*, D.C.S.D.Cal., 79 F.Supp. 748 (1948); 6 Nichols on Eminent Domain § 26.1123, p. 26–65.

And see quotations from 6 Nichols on Eminent Domain, supra. Historically, an adequate description in the complaint has been required.[6]

The complaint does not contain the required description. But then appellant's own words in the complaint recognize a disregard for the specific requirement of Rule 71.1, W.R.C.P. Appellant there said "it is not possible to provide a description." It was possible. Other condemnors provide adequate descriptions under far more difficult conditions.

## 2. IMPROPRIETY OF THE HEARING PROCEDURE.

One of the obvious improprieties of the hearing procedure was the failure to address the omission of a proper description in the complaint. The trial court should have so ruled and either allowed the appellant sufficient time in which to file an amended complaint with the necessary description or the complaint should have been dismissed without prejudice. If necessary, it should have issued the order, previously referred to, for entry by appellant on appellees' land for necessary surveys. With the parties before the court, appellees' consent to entry for such purpose was a probability. Amendments of complaints are authorized by subsection (f) of Rule 71.1, W.R.C.P., "[w]ith the leave of court * * * as many times as desired." It sets forth the necessity and method for service and notice of the amendment. Dismissal of the complaint "for good cause shown" is authorized by subsection (k)(3) of Rule 71.1, W.R.C.P.,

---

6. Section 1–767, W.S. 1957, setting forth the procedures most commonly used for condemnation prior to adoption of Rule 71.1, W.R.C.P., required the complaint to include "a specific description of each parcel of property, interest or right sought to be taken or injuriously affected."

and the fact that such can be *without prejudice* is recited in subsection (k)(4) of that rule.

The trial court indicated its recognition of the defect in description in the "summary judgment," but this defect should have been rectified, or at least the opportunity to rectify it should have been offered, before an appealable order or judgment was entered.

It should be here noted that the inadequacy of the description in the complaint was not rectified by the evidence produced at the hearing. Entirely aside from the specific requirement of the rule for adequate description in the complaint and from the impossible position in which it placed the appellees with respect to preparation of their case, the only effort at the hearing to supply a specific description was the introduction into evidence of an aerial photographic map with some of the roads on it highlighted. Some of the highlighted roads were represented to be the property to be taken. Perhaps a surveyor could establish a line by reference to the map. But there is no evidence at all as to the width of the proposed right-of-way—whether 25 feet or 500 feet if the taking be under §§ 1–26–301, et seq., W.S.1977, or whether 25 feet or 100 feet if the taking be under §§ 1–26–401, et seq., W.S.1977.[7] Without that factor, the amount of land to be taken cannot be determined. A usual description of a right-of-way is "x feet on each side of a center line running as follows." Then is set forth the starting point, the course. and direction of the center line, and the terminus.

But, beyond the description issue, the hearing was defective in other ways. Its purpose was to resolve the first phase of the eminent domain action—to determine the regularity of the proceedings. It got off the track on this purpose and ended up with an improper "summary judgment."

In addition to the treatment of the description matter, it would serve little purpose here to detail the incidents in this case relative to the five other determinations to be made concerning the regularity of the proceedings. But in summary:

1. Arguments were made relative to the *power or authority or right* to make the appropriation. The trial court ruled that appellant lacked the same. The majority opinion finds otherwise. I believe we do not have sufficient facts[8] before us to resolve the issue, and a resolution of it would be piecemeal in any event. I will address the piecemeal aspect later.

2. The trial court ruled that the *purpose* was improper since a mine haul road was not pertinent to appellant's oil and gas activities. Again the majority opinion is otherwise. I believe the factual inquiry must go further and that evidence is necessary to establish the actual use to be made of the road. Although the determination of public use is for the legislature, the application of the facts in the case before the courts to the public use as defined and intended by the legislature is a judicial function.

"The final determination of whether a use or purpose is within the limits of legislative discretion is a judicial function; thus it is for the courts to decide whether a given use is a public use. *   * "

---

7. Subsection (d) of § 1–26–401, W.S.1977, provides:

"A way of necessity for a mine truck haul road shall not be granted except where no other reasonable and practicable way is available. The petitioner for a mine truck haul road way of necessity shall show that his petition is made in good faith, that no other reasonable and practical way is available and that the mining operation is economically feasible. The way of necessity may not exceed in area that which is actually necessary for the haul road, and in no case shall it exceed one hundred (100) feet in total width."

8. The majority opinion recites that there is no genuine issue as to material facts. I believe that there are material factual issues to be resolved, such as the extent of the taking, the necessity for it, the existence of a public service aspect, the actual use to be made of the right-of-way, the exact purpose for the road, and the practicality and feasibility of its use as a mine haul road. A material fact under §§ 1–26–401, et seq., W.S.1977, proceedings is whether or not the operation is economically feasible. See footnote 7.

*Reel v. City of Freeport*, 61 Ill.App.2d 448, 209 N.E.2d 675, 678 (1965); *Kessler v. City of Indianapolis*, 199 Ind. 420, 157 N.E. 547 (1927); *Colorado Central Power Co. v. City of Englewood*, 10th Cir. 1937, 89 F.2d 233.

The scrutiny should be more intense in making the determination of a public purpose when the eminent domain power is delegated to private entities than when used by governmental bodies.[9] As said in *Baycol, Inc. v. Downtown Development Authority*, Fla., 315 So.2d 451, 455 (1975):

> "The power of eminent domain is one of the most harsh proceedings known to the law. Consequently, when the sovereign delegates this power to a political unity or agency, a strict construction must be given against the agency asserting the power. The burden is on the condemning authority to establish a public purpose and reasonable necessity for the taking." [Footnotes omitted.]

3. The *subjectivity or availability* of the property for appropriation is not pertinent to this case since the appropriation does not involve property of the United States, or property in which there is a conflict between more than one entity with eminent domain powers, or property already devoted to public use.

4. While not addressed at the hearing, the *interest* to be condemned seems to be a right-of-way easement and not a fee interest. The *quantum* to be taken is related in this instance to the description which, as previously noted, is not sufficient to designate the quantum.

5. The *necessity* of the taking as well as the quantum is largely within the discretion of the condemnor. But the taking must not be for more than that required for the purpose or public use. To do so would be a denial of due process of law. (*City of Carlsbad v. Ballard*, 71 N.M. 397, 378 P.2d

814 (1963); *Knappen v. Division of Administration, State Department of Transportation*, Fla.App., 352 So.2d 885 (1977).) Arguments were made to the trial court concerning the necessity for the taking, but the evidence thereto was not specific and was very limited. The trial court did not rule thereon—nor could it without an adequate description. In this connection, it is noted that eminent domain power may not be exercised to obtain a right-of-way to a piece of property if the condemnor has a reasonably adequate way otherwise than over the lands of the condemnee. *McGowin Investment Company v. Johnstone*, 54 Ala.App. 194, 306 So.2d 286 (1974); and see *McIlquham v. Anthony Wilkinson Live Stock Co.*, 18 Wyo. 53, 104 P. 20 (1909), wherein the court said at page 22:

> "* * * It is at least well settled that where a party has one way by which he can reach a public highway, and which affords him reasonable facilities for possessing, using and enjoying his own premises, he is not entitled to another way as a way of necessity. * * *"

Section 1–26–401(d), W.S.1977, part of the statutory procedure which the majority of the court holds to be applicable in this case, is specific in this requirement.[10]

As already noted, the trial court should have first addressed the adequacy of the complaint (including the presence of a description), authorizing an amendment thereof or dismissing it without prejudice until it complied with the requirements of Rule 71.-1(c), W.R.C.P. Such action is authorized and implied by subsection (e) of Rule 71.1, W.R.C.P., wherein it is stated that the court "shall hear proofs and allegations of all parties interested touching the regularity of the proceeding."

Thereafter, the court should have held the hearing required by subsection (e) of

9. The legislative intent and attitude in this respect is exemplified in § 30–1–130, W.S.1977 (S.L. of Wyo. 1967, Ch. 244, § 2), which concerned the delegating of eminent domain powers to mining companies for underground rights-of-way. It provides that appropriations under such powers require a showing of "good faith and that the right-of-way easement is necessary to continue the practical and economical development of a commercially feasible mining operation then being conducted."

10. See footnote 7.

Rule 71.1, W.R.C.P., and considered the five itemized incidents relative to the regularity of the proceedings. In condemnation proceedings, rulings should be made on three of such incidents in every instance: Proper purpose, quantum and interest, and availability or subjectivity of the property. The other two incidents, (1) power, authority or right to take, and (2) the necessity therefor are considered as established and contest thereon waived unless the issues are raised in an answer. Subsection (d)(3) of Rule 71.1, W.R.C.P. The answers in this case raised both of these issues. The findings and conclusions with respect thereto should have been set forth in the order or judgment issued on this phase of the action. One reason for determination of all issues in the one order is to prevent multiple appeals—such as can occur in this case should the trial court find against appellant on another of the first phase incidents when the matter is next before it. For example, the trial court could find that there is not a necessity for a right-of-way, and the case could again be on appeal for resolution of the propriety of that finding.

In this case, we end up without a description from which the necessity, the availability and the quantum of taking can be determined. We end up with a "summary judgment," which is an anachronism since Rule 71.1, W.R.C.P., sets forth a procedure wherein the resulting order or judgment on the first phase of the action is not of a summary nature.

Additionally, although subsection (a) of Rule 71.1, W.R.C.P., provides that the Wyoming Rules of Civil Procedure shall govern the procedure for condemnation "except as otherwise provided in this rule," and although Rule 56, W.R.C.P., authorizes summary judgments under proper conditions, Rule 56 also provides that the motion for a summary judgment "shall be served at least 10 days before the time fixed for the hearing." The motion was not made in this instance until during the hearing itself.[11]

The occurrences, and the sequence thereof, at the hearing in this case were unusual. The complaint listed the authority for the taking to be that provided by §§ 1–26–401 through 1–26–404, W.S.1977. At the outset of the hearing, appellant's motion was considered whereby it sought to amend the complaint by adding §§ 1–26–301 through 1–26–303, W.S.1977, as authority for the taking. Appellees opposed the motion and contended that they should be allowed time to amend their answers if it were granted. The question as to whether or not § 1–26–401, W.S.1977, gave authority to appellant for the action was discussed, and the trial court ruled that it did not and that he would dismiss the complaint for this reason. The trial court then granted appellant's motion to amend its complaint to include §§ 1–26–301 through 1–26–303, W.S.1977, as authority for the taking. Appellees then moved for a summary judgment with reference to such. The trial court received evidence on the motion and heard argument on it. The trial court then granted the motion for a summary judgment on the lack of authority to take in §§ 1–26–301 through 1–26–303, W.S.1977. Appellant then moved to have the evidence submitted with reference to the summary judgment be made "part of the order relative to 1–26–401." The motion was opposed by appellees Graham and Reislands. The trial court then "reconsidered" its ruling on the motion to dismiss and granted the motion. It stated that "[t]he court's ruling will remain the same on that motion. And the court will grant the summary judgment as stated." The judgment itself reads:

> "IT IS HEREBY ORDERED that defendants' motion for summary judgment against plaintiff be, and it hereby is, granted, and that summary judgment be entered in favor of defendants and against plaintiff, and that plaintiff's Amended Complaint be dismissed."

If this was a dismissal of the complaint, it was not a dismissal of the cause—and

---

11. This type of situation could not occur under Rule 71A of the Federal Rules of Civil Procedure inasmuch as subsection (e) of that rule provides that in addition to the answer, "[n]o other pleading or motion asserting any additional defense or objection shall be allowed."

therefore not appealable (see supra), and it does not "otherwise provide" and was therefore without prejudice—pursuant to Rule 71.1(k)(4), W.R.C.P., which provides that "[e]xcept as otherwise provided in the notice, or stipulation of dismissal or order of the court, *any dismissal is without prejudice*," (emphasis supplied).

If it was a "summary judgment," it was on a motion made without timely notice. Nor was it a motion to dismiss turned into a motion for summary judgment on receipt of evidence since the complaint was already dismissed.

### CONCLUSION

The complaint did not contain a sufficient description. This fact is admitted in the complaint. The court so found. The face of the complaint so reflects since the width of the right-of-way and its termini and course are not set forth. The omission is jurisdictional and invalidates the proceedings.

Eminent domain proceedings are controlled by Rule 71.1, W.R.C.P. The proceedings are special proceedings. The first phase of the proceedings (the hearing) was incomplete and inadequate. The lack of proper description should have been corrected. The necessity for the taking and the quantum should have been determined. If the taking were to be under § 1–26–401, W.S.1977 (as the majority opinion indicated it should be), findings should have been made relative to the existence of another available reasonable and practical way, and to the economic feasibility of the mining operation.[12] All of the first phase matters should have been considered and acted upon to avoid piecemeal appeals, and the order should have been entered accordingly.

For all or any one of the several foregoing reasons, this matter should be remanded to the district court with directions to set a date for filing of an amended complaint and for additional proceedings in accordance with this dissenting opinion.

12. See footnote 7.